**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 22-10941-AEC |
| | ) | |
| JARED EVANS, | ) | CHAPTER 7 |
| | ) | |
| Debtor | ) | HON. AUSTIN E. CARTER |
| JOHN DEERE CONSTRUCTION & FORESTRY COMPANY, | ) | |
| Movant | ) | |
| vs. | ) | CONTESTED MATTER |
| | ) | |
| JARED EVANS, | ) | |
| Debtor | ) | |
| ROBERT M. MATSON, | ) | |
| Trustee | ) | |

**NOTICE OF ASSIGNMENT OF HEARING ON MOTION FOR RELIEF FROM AUTOMATIC STAY**

**JOHN DEERE CONSTRUCTION & FORESTRY COMPANY** and **JOHN DEERE FINANCIAL, f.s.b.** have filed documents with the Court for a **MOTION FOR RELIEF FROM AUTOMATIC STAY AND WAIVER OF 30-DAY REQUIREMENT FOR HEARING PURSUANT TO 11 U.S.C. § 362.**

**YOUR RIGHTS MAY BE AFFECTED. You should read these documents carefully and discuss them with your attorney, if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one. If not served with this notice in accordance with the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure, a copy of the motion [or other type of pleading] may be obtained upon written request to counsel for the Movant (or Objecting Party) (identified below) or at the Clerk's office.**

If you do not want the court to grant the Motion, or if you want the court to consider your views on the Motion, **the Court will hold an initial telephonic hearing for announcements on the *Motion to Relief from Automatic Stay*** at the following number: (toll-free number)***: 1-888-398-2342***; access code: ***5569600***, which will be held on: **May 10, 2023 at 10:00 A.M. at United States Courthouse, CB King U.S. Courthouse, Second Floor, 201 West Broad Avenue, Albany Georgia 31701.**

**Parties should consult the Court's website (www.gamb.uscourts.gov) concerning whether the hearing will be in-person, telephonic or virtual. Please refer to Administrative Order #145 for more guidance.**

You may also file a written response to the pleasing with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and one whole (including addresses) you served the response. Mail or deliver your response so that the Clerk receives it at least two business days before the hearing. You must also mail a copy of your response to the undersigned at the address stated below.

**If you or your attorney does not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting relief.**

This notice is sent by the undersigned pursuant to MDGA Local Rule 9004-1.

This 24th day of March, 2023.

*/s/ Michael B. Pugh*
**MICHAEL B. PUGH**
Georgia State Bar No. 150170

For the Firm of
THOMPSON, O'BRIEN, KAPPLER & NASUTI, P.C.
2 Sun Court, Suite 400
Peachtree Corners, Georgia 30092
(770) 925-0111
mpugh@tokn.com
Attorneys for John Deere Construction & Forestry Company
and John Deere Financial, f.s.b.

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 22-10941-AEC |
| | ) | |
| JARED EVANS, | ) | CHAPTER 7 |
| | ) | |
| Debtor | ) | HON. AUSTIN E. CARTER |
| | ) | |
| JOHN DEERE CONSTRUCTION & FORESTRY COMPANY, | ) | |
| Movant | ) | |
| vs. | ) | CONTESTED MATTER |
| | ) | |
| JARED EVANS, | ) | |
| Debtor | ) | |
| ROBERT M. MATSON, | ) | |
| Trustee | ) | |

**<u>MOTION FOR RELIEF FROM AUTOMATIC STAY AND WAIVER OF 30 DAY REQUIREMENT FOR HEARING PURSUANT TO 11 U.S.C. § 362</u>**

**NOW COMES**, JOHN DEERE CONSTRUCTION & FORESTRY COMPANY and JOHN DEERE FINANCIAL, f.s.b. (collectively, "Deere"), creditors and parties in interest in the above-captioned matter, and file this Motion for Relief from Automatic Stay and Waiver of 30 Day Requirement for Hearing Pursuant to 11 U.S.C. § 362. In support thereof, Deere respectfully states as follows:

**<u>Background</u>**

1.

Jared Evans (the "Debtor") filed for relief under Chapter 7 of Title 11 of the United States Code on December 8, 2022 (the "Petition Date").

2.

Jurisdiction is proper pursuant to 28 U.S.C. §§ 157 and 11 U.S.C. § 362.

## **The Security Agreements**

3.

Each of the contracts referred to herein contain provisions which state in pertinent part that the security interest granted in the equipment to secure the borrower's obligations in the contract, also secures any other obligations which the borrower may owe to Deere or any of its affiliates or assignees, now and in the future, and the borrower agrees that any security interest previously granted to Deere or its affiliates shall also secure the borrower's obligations under each contract. Additionally, each contract provides that a default occurs, among other grounds, upon a breach of any provision in the contract or a default occurs under any other agreement between the Debtor and Deere or any of its affiliates.

**Contract No. *9702/Security Agreement 1**

4.

On or about January 24, 2022, the Debtor and Southern Trucking Company, LLC (the "Company") entered into a Loan Contract – Security Agreement ("Security Agreement 1") with Deere whereby the Debtor and the Company financed the purchase of one (1) John Deere 748L-II Grapple Skidder, Serial No. 1DW748LBAKF701438; one (1) John Deere 643L Wheeler Feller Buncher, Serial No. 1DW643LXLFF673531; one (1) BARKO 495 Knuckleboom Log Loader, Serial No. 11349524077; one (1) IG-John 48 Log Trailer, Serial No. 1B9MC4828DFBJ4590; one (1) CSI DL-4400 Slasher, Serial No. 440009055; one (1) CSI PTD-264 Delimber, Serial No. 26412112475 and a Physical Damage Insurance Premium (collectively "Equipment 1"). A true and correct copy of Security Agreement 1 is attached hereto and incorporated herein by reference as Exhibit "1".

5.

Pursuant to Security Agreement 1, the Debtor and the Company financed $364,743.69 and were

obligated to pay $11,239.47 per month beginning on February 24, 2022, for thirty-six (36) consecutive months on the same day of each successive month.

6.

UCC-1 Financing Statements were filed on February 10, 2022, February 24, 2022, and August 10, 2022, reflecting Deere's interest in Equipment 1. True and correct copies of the Financing Statements are attached hereto and incorporated herein by reference as Exhibit "2".

7.

On or about July 18, 2022, the Debtor and the Company entered into a Modification Agreement ("Modification 1") with Deere. Modification 1 released the lien on the BARKO 495 Knuckleboom Log Loader, Serial No. 11349524077, to the Debtor and the Company. Modification 1 also adjusted the monthly payment amount to $9,846.97. Modification 1 is attached hereto as Exhibit "3"

8.

Security Agreement 1 is in default. The total amount outstanding under Security Agreement 1 including principal, accrued interest, and late charges, but excluding attorneys' fees and other costs and charges that Deere is entitled to recover under the Security Agreement, is $289,768.86. Equipment 1 has an estimated "desktop" wholesale value of $189,700.00 and an estimated "desktop" retail value of $227,640.00. Thus, there is little or no equity in Equipment 1.

**Contract No. *2876/Security Agreement 2**

9.

On or about April 6, 2022, the Debtor and the Company entered into a Loan Contract – Security Agreement ("Security Agreement 2") with Deere whereby the Debtor and the Company financed the purchase of one (1) Maxi-Load Scale Systems, 089 Scale System, Serial No. 2553 ("Equipment 2"). A

true and correct copy of Security Agreement is attached hereto and incorporated herein by reference as Exhibit "4".

10.

Pursuant to Security Agreement 2, the Debtor and the Company financed $31,644.00 and were obligated to pay $1,012.38 per month beginning on May 5, 2022, for thirty-six (36) consecutive months on the same day of each successive month.

11.

A UCC-1 Financing Statement was filed on April 25, 2022, reflecting Deere's interest in Equipment 2. True and correct copies of the Financing Statements are attached hereto and incorporated herein by reference as Exhibit "5".

12.

Security Agreement 2 is in default. The total amount outstanding under Security Agreement 2 including principal, accrued interest, and late charges, but excluding attorneys' fees and other costs and charges that Deere is entitled to recover under the Security Agreement, is $30,380.75. Equipment 2 has an estimated "desktop" wholesale value of $23,166.67 and an estimated "desktop" retail value of $27,800.00. Thus, there is little or no equity in Equipment 2.

**Contract No. *1251/Security Agreement 3**

13.

On or about July 8, 2022, the Debtor and the Company entered into a Loan Contract – Security Agreement ("Security Agreement 3") with Deere whereby the Debtor and the Company financed the purchase of one (1) John Deere 437E Log Loader, Serial No. 1T0437EDLJF342341; one (1) CSI PTD-264 Delimber, Serial No. 26419015416; and one (1) Big-John LTDK Log Trailer, Serial No.

1B9MC4821KFBJ7411 (collectively, "Equipment 3"). A true and correct copy of Security Agreement is attached hereto and incorporated herein by reference as Exhibit "6".

14.

Pursuant to Security Agreement 3, the Debtor and the Company financed $201,909.62 and were obligated to pay $6,705.95 per month beginning on August 21, 2022, for thirty-six (36) consecutive months on the same day of each successive month.

15.

A UCC-1 Financing Statement was filed on July 25, 2022, reflecting Deere's interest in Equipment 3. True and correct copies of the Financing Statements are attached hereto and incorporated herein by reference as Exhibit "7".

16.

Security Agreement 3 is in default. The total amount outstanding under Security Agreement 3 including principal, accrued interest, and late charges, but excluding attorneys' fees and other costs and charges that Deere is entitled to recover under Security Agreement 3, is $212,585.16. Equipment 3 has an estimated "desktop" wholesale value of $145,500.00 and an estimated "desktop" retail value of $174,600.00. Thus, there is little or no equity in Equipment 3.

**Contract No. *9752/Credit Agreement**

17.

On or about May 9, 2022, the Debtor, the Company and John Deere Financial, f.s.b., an affiliate of Deere, entered into a Power Plan and Credit Application (the "Credit Agreement") A true and correct copy of the Credit Agreement is attached hereto and incorporated herein by reference as Exhibit "8".

18.

The Credit Agreement payments are in default. The total amount outstanding under Credit Agreement including principal, accrued interest, and late charges, but excluding attorneys' fees and other costs and charges that Deere is entitled to recover under the Credit Agreement, is $7,500.23. The Credit Agreement is secured by Equipment 1-3.

**Disclosure under LBR 4001-1(a)(4)**

19.

Deere's liens are purchase money liens and are superior to any claims asserted by any other creditors.

**Relief Requested**

20.

The Debtor is in possession of Equipment 1, 2, and 3 (collectively, the "Equipment") and is enjoying the continued use of said Equipment. Such continuing use is causing the Equipment to depreciate and deteriorate with no commensurate value being paid to Deere. Therefore, the automatic stay should be terminated for cause and for lack of adequate protection pursuant to U.S.C. § 362(d)(1).

21.

The Debtor did not disclose the Equipment on his bankruptcy schedules. Deere believes the Debtor may be hiding or has sold the Equipment. As such, the automatic stay should be terminated for cause to allow Deere to exercise its rights as to Equipment.

22.

The Equipment is burdensome to the estate or of inconsequential value and should be abandoned and the 14-day requirement pursuant to F.R.B.P. 4001(a)(3) should be waived.

**WHEREFORE,** Deere prays that:

A. the automatic stay of 11 U.S.C. § 362 be terminated to permit Deere to exercise its contractual and State law rights and remedies including repossession and sale of the Equipment; and

B. the Court grant such other and further relief as it deems just and proper.

RESPECTFULLY SUBMITTED this 24th day of March, 2023.

*/s/ Michael B. Pugh*
**MICHAEL B. PUGH**
Georgia State Bar No. 150170

THOMPSON, O'BRIEN, KAPPLER & NASUTI, P.C.
2 Sun Court, Suite 400
Peachtree Corners, Georgia 30092
(770) 925-0111
E-mail: mpugh@tokn.com
Attorneys for John Deere Construction & Forestry Company
and John Deere Financial, f.s.b.

RECEIVED
JAN 28 2022

C&F Business or Commercial Use

JOHN DEERE FINANCIAL

JOHN DEERE FINANCIAL

Application ID: 13570594
Version Number: 7
FIXED RATE CONTRACT

# LOAN CONTRACT - SECURITY AGREEMENT

Contract Begin Date : 01/24/2022

| SELLER'S NAME AND ADDRESS | DEALER NUMBER | PHONE NUMBER |
|---|---|---|
| FLINT EQUIPMENT COMPANY<br>1206 BLAYLOCK STREET<br>ALBANY, GA 31705 | | 229-888-1212 |

| BORROWER'S NAME AND PHYSICAL ADDRESS | BORROWER'S TAX ID NUMBER | BORROWER'S PHONE NO. | TYPE OF BUSINESS |
|---|---|---|---|
| SOUTHERN TRUCKING COMPANY L.L.C<br>2136 GA HIGHWAY 93 S LOT 2<br>CAIRO, GA 39828-6976 | **-***8609 | 5932 | Limited Liability Company |
| BORROWER RESIDES IN (County/State)<br>GRADY, GA | BORROWER AGREES TO KEEP GOODS IN (County/State)<br>GRADY, GA | | |
| NAME AND TITLE OF SIGNING OFFICER<br>JARED H EVANS - Member | | | |

| CO-BORROWER'S NAME AND PHYSICAL ADDRESS | CO-BORROWER'S SOC. SEC. NUMBER | CO-BORROWER'S PHONE NO. | TYPE OF BUSINESS |
|---|---|---|---|
| JARED H EVANS<br># 2 2136 GA HIGHWAY 93 S<br>CAIRO, GA 39828 | ***-**-9796 | 8874 | |

**1. Parties.** This Loan Contract-Security Agreement ("Contract") is entered into between John Deere Construction & Forestry Company ("we", "us" or "our") and the borrower(s) indicated above ("you" or "your"). If more than one borrower is indicated, each borrower shall be jointly and severally liable for all of the obligations under this Contract.

**2. Loan.** You hereby apply for a loan in the Amount Financed shown below, which, if accepted by us, the loan will be (a) subject to the terms and conditions set forth in this Contract, and (b) used to finance the balance due on the purchase from the Seller of the equipment and/or services described below (the "Equipment"). All attachments and accessories itemized on this Contract and all replacements, parts and repairs to the Equipment shall form part of the Equipment.

**3. Installment Payments.** In addition to any down payment, you agree to pay us the Amount Financed, together with finance charges from the Date Finance Charge Begins, at the Annual Percentage Rate, by remitting each of the Installment Payments on or before the due dates indicated. Any amounts applied to this Contract will be applied first to any late charges, any charges for dishonored checks and any other fees or costs due under this agreement, then to finance charges, computed on the date the payment is received and the remainder to the Amount Financed. You agree that your payments will be applied as of the date of receipt if received by 11:00 a.m. Central Time Monday through Friday (otherwise next business day); but if payment is not accompanied by the payment stub, is not in the envelope we provided, includes other items such as other checks, staples or paper clips, or is not received at that location, credit may be delayed up to five days. This Contract is not accepted by us until we sign it, even if you have made a payment to us. You agree to remit to us the Installment Payments and all other amounts when due and payable each Billing Period, even if we do not send you a bill or an invoice. **YOUR PAYMENT OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL, AND ARE NOT SUBJECT TO CANCELLATION, REDUCTION OR SETOFF FOR ANY REASON WHATSOEVER.** For any scheduled payment which is not received by its due date, you agree to pay us interest on the unpaid amount at a rate of 20% per annum on that scheduled payment, but in no event more than the maximum lawful rate, from the due date until paid. Restrictive endorsements on checks you send to us will not change or reduce your obligations to us. We will not lose any rights if we accept late or partial payments or delay enforcing our rights under this Contract. If a check or electronic payment authorization you give us is dishonored upon first presentment, you agree to pay us a fee of $25.00, or the maximum amount permitted by law, whichever is less. Installment Payments and other payments, including proceeds of insurance or any sale of the Equipment, may be applied, at our discretion and in spite of any instructions you may provide, to any obligation you may have to us or any of our affiliates. If the total of all payments made by you exceeds the total of all amounts due under this Contract by less than $25.00, we may retain such excess.

**THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE**



EXHIBIT 1

*EQUIPMENT PURCHASED*

| QTY | NEW/ USED | MANUFACTURER | EQUIPMENT DESCRIPTION | AMOUNT |
|---|---|---|---|---|
| 1 | USED | JOHN DEERE | 748L-II GRAPPLE SKIDDER | $190,500.00 |
| PRODUCT ID NO. 1DW748LBAKF701438 | | | | |
| 1 | USED | JOHN DEERE | 643L WHEEL FELLER BUNCHER | $83,500.00 |
| PRODUCT ID NO. 1DW643LXLFF673531 | | | | |
| 1 | USED | BARKO | 495 Knuckleboom Log Loaders | $49,997.00 |
| PRODUCT ID NO. 11349524077 | | | | |
| 1 | USED | IG-JOHN | 48 Log Trailer | $1.00 |
| PRODUCT ID NO. 1B9MC4828DFBJ4590 | | | | |
| 1 | USED | CSI | DL-4400 Slasher | $1.00 |
| PRODUCT ID NO. 440009055 | | | | |
| 1 | USED | CSI | PTD-264 Delimber | $1.00 |
| PRODUCT ID NO. 26412112475 | | | | |
| 1 | | | Physical Damage Insurance Premium | $50,193.69 |

*TRADE-IN and CASH DOWN PAYMENT*

| QTY | MFR | MODEL | DESCRIPTION OF TRADE-IN (From Purchase Order) | PRODUCT ID NO. | AMOUNT |
|---|---|---|---|---|---|
| | | | | TOTAL TRADE-IN: | $0.00 |
| | | | | CASH DOWN PAYMENT: | $10,000.00 |
| | | | | RENTAL APPLIED: | $0.00 |
| | | | | TOTAL TRADE-IN PLUS CASH DOWN: | $10,000.00 |

**THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE**

| INSTALLMENT PAYMENTS | | |
|---|---|---|
| DATE FINANCE CHARGE BEGINS: **January 24, 2022** | | |
| *The first Installment Payment Due Date is February 24, 2022 and each successive Installment Payment is due on the same day of the Month thereafter, (the "Billing Period"), unless otherwise provided below;* | | |
| NUMBER OF PAYMENTS | AMOUNT OF EACH PAYMENT | DUE DATE |
| **36** | **$11,239.47** | **February 24, 2022** |

The amounts shown below as Finance Charge, Total of Payments and Total Sale Price are estimates based upon the assumption that payments will be made on the scheduled payment due date according to the installment schedule. The actual Finance Charge, Total of Payments, and Total Sale Price may vary depending upon the early or late payment of scheduled installments.

| ITEMIZATION OF AMOUNT FINANCED | | |
|---|---|---|
| SALES TAX (Paid to Govt. Agencies) | | **$0.00** |
| CASH PRICE (Including Tax) | 1 | **$374,193.69** |
| TOTAL DOWN PAYMENT (Sum of Trade-In & Cash Down Payment) | 2 | **$10,000.00** |
| UNPAID BALANCE OF CASH PRICE (The amount credited to your account with us) | 3 | **$364,193.69** |
| INSURANCE (Physical Damage Paid to Insurance Companies) | 4 | **$0.00** |
| ORIGINATION FEES | 4A | **$500.00** |
| OFFICIAL FEES (Paid to Public Officials) | 5 | **$50.00** |
| AMOUNT FINANCED (Lines 3, 4, 4A, 5 & 5A (If Applicable) ) The amount of credit provided to you | 6 | **$364,743.69** |
| FINANCE CHARGE (Based on Line 6) The dollar amount the credit will cost you | 7 | **$39,877.23** |
| TOTAL OF PAYMENTS (Lines 6 & 7) The amount you will have paid after you have made all payments as scheduled | 8 | **$404,620.92** |
| ANNUAL PERCENTAGE RATE (The cost of your credit as a yearly rate) | | **6.87%** |
| TOTAL SALE PRICE (Lines 1, 4, 4A, 5, 5A (If Applicable), & 7) The total price of your purchase on credit, including the Total Down Payment of $10,000.00 | | **$414,620.92** |

**4. Prepayment.** You may prepay your obligations under this Contract in full at any time by paying the unpaid principal balance and any earned and unpaid finance charges. The unpaid principal balance includes any origination fee.

**5. Security Interest; Missing Information**. You grant us and our affiliates a security interest in the Equipment (and all proceeds thereof) to secure all of your obligations under this Contract and any other obligations which you may have to us or any of our affiliates or assignees at any time and you agree that any security interest you have granted or hereafter grant to us or any of our affiliates shall also secure your obligations under this Contract. You agree that we may act as agent for our affiliates and our affiliates may act as agent for us, in order to perfect and realize on any security interest described above. Upon receipt of all amounts due and to become due under this Contract, we will release our security interest in the Equipment (but not the security interest for amounts due an affiliate), provided no event of default has occurred and is continuing. You agree to keep the Equipment free and clear of all liens and encumbrances, except those in favor of us and our affiliates as described above, and to promptly notify us if a lien or encumbrance is placed or threatened against the Equipment. You irrevocably authorize us, at any time, to (a) insert or correct information on this Contract, including your correct legal name, serial numbers and Equipment descriptions; (b) submit notices and proofs of loss for any required insurance; (c) endorse your name on remittances for insurance and Equipment sale or lease proceeds; and (d) file a financing statement(s) which describes either the Equipment or all equipment currently or in the future financed by us. Notwithstanding any other election you may make, you agree that (1) we can access, retain and use, at any times we elect, any information regarding the location, maintenance, operation and condition of the Equipment; (2) you irrevocably authorize anyone in possession of that information to provide all of that information to us upon our request until our security interest in the Equipment is terminated; (3) you will not disable or otherwise interfere with any information gathering or transmission device within or attached to the Equipment; and (4) we may reactivate any such device.

**6. Equipment Maintenance, Operation and Use.** You agree to (a) **USE THE EQUIPMENT ONLY FOR AGRICULTURAL, BUSINESS OR COMMERCIAL PURPOSES AND NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES;** (b) operate and maintain the Equipment in accordance with all (1) applicable laws, ordinances and regulations, (2) manuals and other instructions issued by the manufacturer(s) and supplier(s), including any warranty coverage requirements and (3) insurance policy terms and requirements; (c) keep the Equipment in as good a condition as when delivered to you, reasonable wear excepted, including performing (at your own expense) all necessary maintenance and repairs; (d) allow us and our agent(s) to inspect the Equipment and all of your records related to its use, maintenance and repair, at any reasonable time; and (e) not permit the Equipment to be used by, or to be in the possession of, anyone other than you or your employees.

**THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE**

**7. Insurance.** You agree, at your cost, to maintain all-risk insurance coverage with respect to the Equipment for no less than its full replacement value, naming us (and our successor and assigns) as sole loss payee. You may choose who provides that insurance, but that insurance must be with companies and policies acceptable to us. Your obligation to insure the Equipment continues until all your other obligations under this Contract are satisfied. Each insurance policy must provide that (1) our interest in the policy will not be invalidated by any act, omission, breach or neglect of anyone other than us; (2) the insurer will give us at least 30 days' prior written notice before any cancellation of, non-renewal of, or material change to, the policy; and (3) such coverage shall be primary over any insurance purchased by us (or our affiliates).

Unless you provide us with evidence of the required insurance coverage's, we may, but are not required to, purchase insurance, at your expense, to protect our interests in the Equipment and charge you an insurance fee on which we may make a profit. This insurance may not (1) protect your interests; or (2) pay any claim that you make or any claim that is made against you in connection with the Equipment. You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained the insurance required by this Contract. **THE COST OF THE INSURANCE MAY BE MORE THAN THE COST OF THE INSURANCE YOU MAY BE ABLE TO OBTAIN ON YOUR OWN. THE COVERAGES OF THAT INSURANCE MAY BE DIFFERENT FROM THE COVERAGES OF INSURANCE YOU MAY BE ABLE TO OBTAIN ON YOUR OWN.** You agree to pay us the cost of any insurance plus a $150 insurance placement and service fee. You will immediately pay that amount to us or we may, at our sole discretion, add that cost to the Account Balance and increase the required Installment Payments accordingly.

If a default occurs, you authorize us to cancel the insurance on the Equipment and apply any returned premiums to the Account Balance.

If the cost of the insurance was included in the Amount Financed, that insurance will terminate (a) if your debt to us is discharged, (b) if we release our security interest in the Equipment, (c) if a default occurs and we cancel the insurance, (d) if the Equipment is repossessed, (e) if the Floater Policy under which you purchased that insurance terminates, or (f) on the due date of the final scheduled Installment Payment.

**8. Loss or Damage.** Until all of your obligations under this Contract are satisfied, you are responsible for all risk of loss and damage, loss, theft, destruction or seizure of the Equipment (an "Event of Loss"). You must promptly notify us of any Event of Loss. If the Equipment can be repaired or replaced, you agree to promptly repair or replace the Equipment, at your cost, and the terms of this Contract will continue to apply. If the Equipment cannot be repaired or replaced, you agree to immediately pay us the Account Balance. Upon receipt of the Account Balance, we will release our security interest in the Equipment. All insurance proceeds must be paid directly to us, and we may apply any excess insurance proceeds to any other amounts you owe us or any of our affiliates.

**9. Default.** We may determine you to be in default if: (a) you fail to remit to us any Installment Payment or other payment when due; (b) you breach any other provision of this Contract; (c) you remove any Equipment from the United States; (d) a petition is filed by or against you or any guarantor under any bankruptcy, attachment, execution or insolvency law or you or any such guarantor make an assignment for the benefit of creditors; (e) a default occurs under any other agreement between you (or any of your affiliates) and us (or any of our affiliates); (f) you or any guarantor merges with or consolidates into another entity, sells substantially all its assets, dissolves or terminates its existence, or (if an individual) dies or becomes incompetent; (g) you fail to maintain the insurance required by this Contract; or (h) if for any reason, we deem the debt or the Equipment to be insecure. Time is of the essence under this Contract.

**10. Remedies.** If we determine that you are in default, we may do one or more of the following: (a) recover from you, AS LIQUIDATED DAMAGES FOR LOSS OF BARGAIN AND NOT AS A PENALTY, the Account Balance as of the date of such default, without presentment or demand; (b) declare any other agreements between you and us in default; (c) terminate any of your rights (but none of your obligations) under this Contract and any other agreement between you and us (or any of our affiliates); (d) require you to deliver the Equipment to us in the manner outlined below, or take possession of the Equipment; (e) lease or sell the Equipment or any portion thereof at a public or private sale; (f) apply the net proceeds we receive from any sale, lease or other disposition of the Equipment (after deducting all of our costs and expenses) to your obligations under this Contract, with you remaining liable for any deficiency; (g) require you to reimburse and indemnify us for all losses, claims, damages and expenses of any kind or nature whatsoever incurred in connection with the Equipment or this Contract and/or the enforcement of our remedies hereunder including, without limitation, repossession, repair and collection costs, damage awards, attorneys' fees and court and bankruptcy fees and costs; (h) exercise any other remedy available at law or in equity; and (i) take on your behalf (at your expense) any action required by this Contract which you fail to take. These remedies are cumulative, are in addition to any other remedies provided for by law, and may be exercised concurrently or separately. Any failure or delay by us to exercise any right shall not operate as a waiver of any other right or future right. In no event will the costs and expenses referred to in this section be more than those allowed by law.

If we determine that you are in default, all Equipment must be delivered to the place designated by us, at your expense and in satisfactory condition, along with all use, maintenance and repair records. Equipment is in satisfactory condition if it is in as good a condition as when the Equipment was delivered to you, reasonable wear excepted, as determined by us in our sole discretion.

**11. Assignment.** You will not assign, pledge or otherwise transfer any of your rights or interests in this Contract or any Equipment without our prior written consent. Any assignment without our consent will be void. We may assign this Contract or our interest in the Equipment at any time without notice to you and without your consent. We may provide information about you to any prospective assignee or participant. You agree not to assert against our assignee any claims, offsets or defenses which you may have against us.

**12. Representations and Warranties.** You represent, warrant and covenant to us so long as this Contract is in effect, that: (a) you will not change your name without giving us at least 30 days' prior written notice; (b) each document you sign and deliver to us is duly authorized, executed and delivered by you, and is your valid, legal and binding agreement, enforceable in accordance with its terms; (c) the execution, delivery and performance by you of this Contract does not (and will not) violate any applicable law or breach any order of court or other governmental agency, or of any undertaking you are a party to or by which you or any of your properties are bound; (d) you will comply with all applicable laws, ordinances and regulations; (e) upon execution of this Contract, the Seller shall have good and marketable title to any trade-in equipment free and clear of all liens and encumbrances whatsoever, (f) all information you have given to us is true, accurate and complete; (g) since the date of the most recent financial information given to us, no material adverse change in your business, assets, or prospects has occurred; (h) you will promptly deliver to us such financial statements, reports and other information as we may request; (i) the Equipment was selected by you; (j) the Equipment (including all manufacturer manuals and instructions) has been delivered to, and examined by, you; (k) the safe operation and the proper servicing of the Equipment were explained to you; (l) you received the written warranty applicable to the Equipment and understand that your rights under the written warranty may be limited; (m) the Equipment is unconditionally and irrevocably accepted by you as being suitable for its intended use; (n) the Equipment is in good condition and repair (operating and otherwise); (o) the Equipment shall be used only for the purpose indicated herein, will remain in your possession and will not be sold, rented or leased; and (p) you will pay all taxes assessed on the Equipment.

Unless you are an individual, you also represent, warrant and covenant to us that: (a) you are and will remain duly organized, validly existing and in good standing under the laws of your jurisdiction of organization; (b) you are qualified to do business under the laws of all other jurisdictions where qualification is required or advisable; (c) you will not change your jurisdiction of organization or organization type without at least 30 days' prior written notice to us; and (d) the execution, delivery and performance by you of this Contract will not breach any provision of your organizational documents.

If you are an individual, you agree not to move your residence to a different county or state without at least 30 days' prior written notice to us.

**13. Governing Law; Jurisdiction; Venue. THIS CONTRACT WILL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF IOWA, WHERE THIS CONTRACT IS ACCEPTED AND ENTERED INTO,** except for its conflict of laws provisions. You irrevocably submit to the non-exclusive jurisdiction and venue of federal and state courts located in Des Moines, Iowa and will not claim it is an inconvenient forum for legal action. **YOU AND WE IRREVOCABLY WAIVE ANY RIGHT YOU AND WE MAY HAVE TO A JURY TRIAL.** However, you acknowledge that any Iowa state law compulsory mediation requirements will apply to this agreement or the Equipment only if you are a resident of the State of Iowa.

**14. Miscellaneous. WE HAVE NOT MADE, AND DO NOT MAKE, ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AS TO THE EQUIPMENT'S MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, SUITABILITY, OR OTHERWISE. WE ARE NOT LIABLE FOR CONSEQUENTIAL OR SPECIAL DAMAGES.** You acknowledge that the Seller of the Equipment is not an agent of ours, or authorized to act for or bind us. You agree not to withhold any amount you owe us if you believe you have a claim against us, the Seller, or any manufacturer(s) of the Equipment, but to pursue that claim independently. Any claim you have against us must be made within two years after the event that caused it. All notices must be in writing and will be deemed given 5 days after mailing to the intended recipient at its address indicated above, unless changed by a notice given in accordance with this Section. This Contract supersedes and replaces all prior understandings and communications (oral or written) concerning the subject matter thereof. No part of this Contract can be amended, waived or terminated except by a writing signed by both you and us. This Contract may be signed in separate counterparts that, together, will constitute one document. A paper or facsimile transmission copy of your signature or an electronic signature shall constitute an original signature under applicable law for all purposes. If a court finds any part of this Contract to be invalid or unenforceable, the remainder of this Contract will remain in effect. You permit us, and those third parties who provide services to us, to monitor and record telephone conversations between you and us. You agree that by providing us any telephone number, including a mobile phone number, we, any debt collector we retain, and those third parties who provide services to us, can contact you using that number, including calls using an automatic dialing and announcing device and prerecorded calls. All of our rights shall remain in effect after the expiration or termination of this Contract. Any origination fee will be paid to the dealer or us and is not a document preparation fee and all documents you sign will be prepared by John Deere Financial and not by the dealer.

You and we intend to comply with all applicable laws. In no event will we charge or collect any amounts in excess of those allowed by applicable law. In the event any amount in excess of that allowed by law is charged or recovered, any such charge will be deemed limited by the amount legally allowed and any amount received by us in excess of that legally allowed will be applied by us to the payment of amounts legally allowed under this Contract, or refunded to you.

**PHYSICAL DAMAGE INSURANCE REQUIRED: If you elect Physical Damage Insurance below, such insurance does not include liability insurance coverage for bodily injury or property damage caused to others.**

| INSURANCE DISCLOSURES: You may obtain property insurance from any agent that is acceptable to us. Physical Damage Insurance will not be provided unless you sign below for the premium amount indicated. | TERM IN MONTHS | TOTAL PREMIUM |
|---|---|---|
| | 36 | $50,193.69 |
| **By signing below, you want Physical Damage Insurance and agree to pay the premium. (Sign in this box)**<br>X [signature]<br>JARED H EVANS, Member | | |

**THE TERMS OF THIS CONTRACT SHOULD BE READ CAREFULLY BEFORE SIGNING BECAUSE ONLY THESE WRITTEN TERMS ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES MAY BE LEGALLY ENFORCED. BY SIGNING THIS CONTRACT, YOU AGREE TO THE TERMS ON ALL PAGES. THIS CONTRACT IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN YOU AND US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.**

**I agree that I have received a completely filled in copy of this Agreement.**

SOUTHERN TRUCKING COMPANY L.L.C

1/25/22 By:

(Date Signed) JARED H EVANS, Member

1/25/22 X

(Date Signed) JARED H EVANS, Individually

Accepted By: **John Deere Construction & Forestry Company (Lender)**
**6400 NW 86th Street, Johnston, IA 50131-6600**

By:

(Date Agreement Signed) (Authorized Signature)

**THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE**

GSCCCA eFile1: EF_007395586_001335045_002 Received:Thursday, February 10, 2022 10:19:34 AM Page 1 of 1

[redacted]

FILED & RECORDED
Thursday, February 10, 2022 10:22:26 AM
File Number: 002-2022-001611
Cynthia G. Dillingham
Atkinson County Clerk of Superior Court

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
**UCC DEPARTMENT 8884278713**

B. E-MAIL CONTACT AT FILER (optional)
**JDFUCCFilings@JohnDeere.com**

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

**JOHN DEERE FINANCIAL**
**6400 NW 86TH STREET**
**PO BOX 6630**
**JOHNSTON, IA 50131**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | |
|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME<br>**SOUTHERN TRUCKING COMPANY L.L.C** | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS<br>**2136 GA HIGHWAY 93 S LOT 2** | CITY<br>**CAIRO** | STATE<br>**GA** | POSTAL CODE<br>**39828** | COUNTRY<br>**US** |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | |
|---|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | | |
| OR 2b. INDIVIDUAL'S SURNAME<br>**EVANS** | FIRST PERSONAL NAME<br>**JARED** | ADDITIONAL NAME(S)/INITIAL(S)<br>**H** | | SUFFIX |
| 2c. MAILING ADDRESS<br>**# 2 2136 GA HIGHWAY 93 S** | CITY<br>**CAIRO** | STATE<br>**GA** | POSTAL CODE<br>**39828** | COUNTRY<br>**US** |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| | | | | |
|---|---|---|---|---|
| 3a. ORGANIZATION'S NAME<br>**JOHN DEERE CONSTRUCTION & FORESTRY COMPANY** | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS<br>**6400 NW 86TH ST** | CITY<br>**JOHNSTON** | STATE<br>**IA** | POSTAL CODE<br>**50131** | COUNTRY<br>**US** |

4. COLLATERAL: This financing statement covers the following collateral:

**JOHN DEERE 643L 643L WHEEL FELLER BUNCHER S/N: 673531**
**JOHN DEERE 748L 748L-II GRAPPLE SKIDDER S/N: 701438**
**BARKO 495 495 Knuckleboom Log Loaders S/N: 524077**
**CSI PTD2 PTD-264 Delimber S/N: 112475**
**BIG-JOHN 48 48 Log Trailer S/N: BJ4590**
**CSI DL44 DL-4400 Slasher S/N: 009055**

**together with (1) all attachments, accessories and components, repairs and improvements, (2) all accounts, general intangibles, contract rights and chattel paper relating thereto, and (3) all proceeds, thereto including, without limitation, insurance, sale, lease and rental proceeds, and proceeds of proceeds.**

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
**GA 4795814 02/10/2022**



EXHIBIT
2

https://search.gsccca.org/Imaging/HTML5Viewer.aspx?id=7170941&key1=0022022001611&key2=7170941&county=2&countyname=A

G[redacted]_002 Received:Wednesday, February 23, 2022 1:30:56 PM Page 1 of 1

[redacted]

FILED & RECORDED
Thursday, February 24, 2022 7:03:52 AM
File Number: 002-2022-002094
Cynthia G. Dillingham
Atkinson County Clerk of Superior Court

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
**UCC DEPARTMENT 8884278713**

B. E-MAIL CONTACT AT FILER (optional)
**JDFUCCFilings@JohnDeere.com**

C. SEND ACKNOWLEDGMENT TO: (Name and Address)
**JOHN DEERE FINANCIAL**
**6400 NW 86TH STREET**
**PO BOX 6630**
**JOHNSTON, IA 50131**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER
**FILE NBR: 002-2022-001611 DATE: 02/10/2022**

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ ASSIGNMENT (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☑ PARTY INFORMATION CHANGE:
Check one of these two boxes: This Change affects ☑ Debtor or ☐ Secured Party of record
AND Check one of these three boxes to: ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c ☑ ADD name: Complete item 7a or 7b, and item 7c ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

6a. ORGANIZATION'S NAME
**SOUTHERN TRUCKING COMPANY L.L.C**

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

7a. ORGANIZATION'S NAME

OR

7b. INDIVIDUAL'S SURNAME
**EVANS**

INDIVIDUAL'S FIRST PERSONAL NAME
**JARED**

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)
**HEATH**

SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| **# 2 2136 GA HIGHWAY 93 S** | **CAIRO** | **GA** | **39828** | **US** |

8. ☐ COLLATERAL CHANGE: Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral

Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

9a. ORGANIZATION'S NAME
**JOHN DEERE CONSTRUCTION & FORESTRY COMPANY**

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

10. OPTIONAL FILER REFERENCE DATA:
**GA 4805930 02/23/2022**



https://search.gsccca.org/Imaging/HTML5Viewer.aspx?id=7181541&key1=0022022002094&key2=7181541&county=2&countyname=ATKINSON&user… 1/1

[redacted]

FILED & RECORDED
Wednesday, August 10, 2022 4:29:47 PM
File Number: 002-2022-008637
Cynthia G. Dillingham
Atkinson County Clerk of Superior Court

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
**UCC DEPARTMENT 8884278713**

B. E-MAIL CONTACT AT FILER (optional)
**JDFUCCFilings@JohnDeere.com**

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

**JOHN DEERE FINANCIAL**
**6400 NW 86TH STREET**
**PO BOX 6630**
**JOHNSTON, IA 50131**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER
**FILE NBR: 002-2022-001611 DATE: 02/10/2022**

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ ASSIGNMENT (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ PARTY INFORMATION CHANGE:
Check one of these two boxes: AND Check one of these three boxes to:
This Change affects ☐ Debtor or ☐ Secured Party of record ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c ☐ ADD name: Complete item 7a or 7b, and item 7c ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

6a. ORGANIZATION'S NAME
**SOUTHERN TRUCKING COMPANY L.L.C**

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

7a. ORGANIZATION'S NAME

OR

7b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

8. ☑ COLLATERAL CHANGE: Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☑ RESTATE covered collateral ☐ ASSIGN collateral

Indicate collateral:

**JOHN DEERE 643L 643L WHEEL FELLER BUNCHER S/N: 673531**
**JOHN DEERE 748L 748L-II GRAPPLE SKIDDER S/N: 701438**
**CSI PTD2 PTD-264 Delimber S/N: 112475**
**BIG-JOHN 48 48 Log Trailer S/N: BJ4590**
**CSI DL44 DL-4400 Slasher S/N: 009055**

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

9a. ORGANIZATION'S NAME
**JOHN DEERE CONSTRUCTION & FORESTRY COMPANY**

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

10. OPTIONAL FILER REFERENCE DATA:
**GA 4946655 08/09/2022**

[redacted]121

# CERTIFICATE OF ORIGIN FOR A VEHICLE

BIG JOHN
BIG JOHN TRAILERS
DIVISION OF GOWEN ENTERPRISES, INC.

DATE November 2, 2012

INVOICE NO. 93003

VEHICLE IDENTIFICATION NO. 1B9MC4828DFBJ4590

YEAR 2013

MAKE Big John

BODY TYPE Delimber Loader Trailer

SHIPPING WEIGHT 9,500

H.P. (S.A.E.) 0

G.V.W.R. 55,000

NO. CYLS. 0

SERIES OR MODEL 148LTDE

I, the undersigned authorized representative of the company, firm or corporation named below, hereby certify that the new vehicle described above is the property of the said company, firm or corporation and is transferred on the above date and under the Invoice Number indicated to the following distributor or dealer.

NAME OF DISTRIBUTOR, DEALER, ETC.

Cutting Systems Inc
774 Zeb Road
Union Grove, NC 28689

It is further certified that this was the first transfer of such new vehicle in ordinary trade and commerce.

BIG JOHN TRAILERS

BY: [signature] President

(SIGNATURE OF AUTHORIZED REPRESENTATIVE) (AGENT)

10514 U.S. HIGHWAY 1 N., FOLKSTON, GA 31537
PHONE (912) 496-7469

CITY - STATE

4653

Each undersigned seller certifies to the best of his knowledge, information and belief under penalty of law that the vehicle is [illegible] been registered in this or any state at the time of delivery and the vehicle is not subject to any security interests other than those disclosed herein and warrant title to the vehicle.
FOR VALUE RECEIVED I TRANSFER THE VEHICLE DESCRIBED ON THE FACE OF THIS CERTIFICATE

**DISTRIBUTION-DEALER ASSIGNMENT NUMBER 1**

NAME OF PURCHASER(S) Knight Forestry
ADDRESS 3523 Hwy 84 West Whigham GA 39897
I certify to the best of my knowledge that the odometer reading is [illegible]
DEALER Cutting Systems Inc BY: [signature]
NAME OF DEALERSHIP DEALERS LICENSE NUMBER
Being duly sworn upon oath says that the statements set forth are true and correct. Subscribed and sworn before me
State of North Carolina on this date December [illegible]
County of Iredell Reba S. Bumgarner Notary Public
USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION

REBA S. BUMGARNER NOTARY PUBLIC WILKES COUNTY, N.C. My Comm. Exp. 5-25-[illegible]

**DISTRIBUTION-DEALER ASSIGNMENT NUMBER 2**

NAME OF PURCHASER(S) Flint equipment Co.
ADDRESS 4500 Wendell Dr. SW Atlanta, GA 30336
I certify to the best of my knowledge that the odometer reading is _____ No Tenths
DEALER Knight Forestry UCAR039326 BY: Jason Knight - Pres
NAME OF DEALERSHIP DEALERS LICENSE NUMBER
Being duly sworn upon oath says that the statements set forth are true and correct. Subscribed and sworn before me
State of Georgia on this date January 24, 2022
County of Fulton Amanda M. Sellers Notary Public
USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION
Amanda M. Sellers

**DISTRIBUTION-DEALER ASSIGNMENT NUMBER 3**

NAME OF PURCHASER(S) Southern Trucking Company L.L.C.
ADDRESS 2136 GA Highway 93 S LOT 2 Cairo, GA 39828
I certify to the best of my knowledge that the odometer reading is _____ No Tenths
DEALER Flint Equipment Co. BY: [signature]
NAME OF DEALERSHIP DEALERS LICENSE NUMBER
001109887903
Being duly sworn upon oath says that the statements set forth are true and correct. Subscribed and sworn before me
Tim Kerns
State of Georgia on this date January 31, 2022
County of Fulton Amanda M. Sellers Notary Public
USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION
Amanda M. Sellers

AMANDA M SELLERS NOTARY PUBLIC THOMAS COUNTY, GEORGIA MY COMMISSION EXPIRES JULY 11, 2024

**DISTRIBUTION-DEALER ASSIGNMENT NUMBER 4**

NAME OF PURCHASER(S) _____
ADDRESS _____
I certify to the best of my knowledge that the odometer reading is _____ No Tenths
DEALER _____ BY: _____
NAME OF DEALERSHIP DEALERS LICENSE NUMBER
Being duly sworn upon oath says that the statements set forth are true and correct. Subscribed and sworn before me
State of _____ on this date _____
County of _____ Notary Public
USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION

**ODOMETER DISCLOSURE FOR RETAIL SALE**

Federal Law requires you to state the odometer mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.
I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked. Odometer Reading _____ No Tenths. ☐ The mileage stated is in excess of its mechanical limits. ☐ The odometer reading is not the actual mileage.
**WARNING ODOMETER DISCREPANCY**

Signature(s) of Seller(s) _____
Printed Name(s) of Seller(s) _____ Dealer's No. _____
Signature of Purchaser(s) _____
Printed Name(s) of Purchaser(s) _____
Company Name (If Applicable) _____
Address of Purchaser(s) _____

Date of Statement _____ Date of Sale _____
Being duly sworn upon oath says that the statements set forth are true and correct. Subscribed and sworn before me
on this date _____ Notary Public
State of _____
County of _____
USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION

**LIENHOLDER**

1st lien in favor of John Deere Construction & Forestry Company
whose address is 6400 NW 86th St. Johnston, IA 50131-6600
2nd lien in favor of _____
whose address is _____

REV. 4-99

# CERTIFICATE OF ORIGIN FOR A VEHICLE

**BIG JOHN**
**BIG JOHN TRAILERS**
DIVISION OF GOWEN ENTERPRISES, INC.

DATE November 2, 2012 INVOICE NO. 93003

| VEHICLE IDENTIFICATION NO. | YEAR | MAKE |
|---|---|---|
| 1B9MC4828DFBJ4590 | 2013 | Big John |

| BODY TYPE | SHIPPING WEIGHT |
|---|---|
| Delimber Loader Trailer | 9,500 |

| H.P. (S.A.E.) | G.V.W.R. | NO. CYLS. | SERIES OR MODEL |
|---|---|---|---|
| 0 | 55,000 | 0 | 148LTDE |

COPY

I, the undersigned authorized representative of the company, firm or corporation named below, hereby certify that the new vehicle described above is the property of the said company, firm or corporation and is transferred on the above date and under the Invoice Number indicated to the following distributor or dealer.

NAME OF DISTRIBUTOR, DEALER, ETC.

Cutting Systems Inc
774 Zeb Road
Union Grove, NC 28689

It is further certified that this was the first transfer of such new vehicle in ordinary trade and commerce.

**BIG JOHN TRAILERS**

BY: President
(SIGNATURE OF AUTHORIZED REPRESENTATIVE) (AGENT)

**10514 U.S. HIGHWAY 1 N., FOLKSTON, GA 31537**
**PHONE (912) 496-7469**
CITY - STATE

4653

**JOHN DEERE**
**FINANCIAL**

John Deere Financial
6400 NW 86th Street, P.O. Box 6600
Johnston, IA 50131-6600 USA

18 July 2022

SOUTHERN TRUCKING COMPANY L.L.C.
2136 GA HIGHWAY 93 S LOT 2
CAIRO, GA 39828-6976

RE: Payment Reschedule to: Partial Payoff Release of Requested Equipment

Dear JARED

We would like to take this opportunity to thank you for doing business with John Deere Financial. We have revised your account, 9702.

The new monthly payment amount is $9846.97, with the next payment due 07/24/2022
Release of Requested Equipment - Barko, 495, Log Loader, 11349524077

Please pay this amount going forward. It may take two billing cycles for your statement to reflect the revised payment amount.

This revision does not waive or modify the contractual rights of John Deere Financial.

Insurance:
- ☒ Outside
- ☐ Sentry Insurance (the below information applies)

If your physical damage insurance on the equipment is provided by Sentry Select Insurance Company of Stevens Point, Wisconsin, coverage will end when the first of the following occurs:

1. On the date of early pay off by you; or
2. On the date of early termination of the security interest by John Deere; or
3. On the expiration date of insurance shown in the note or lease acceptance form; or
4. Other reasons as stated in the policy and certificate.

If John Deere extends your note or lease, your insurance coverage is not extended by Sentry Select Insurance Company unless you have paid additional insurance premiums. Please see your note or lease acceptance form for details.

Upon termination of your UltraGard coverage, you may purchase an individual insurance policy. If you want to continue insurance coverage with Sentry Select Insurance Company, please contact Sentry at 877-782-6873 or EquipmentInsurance@Sentry.com.

If you have any questions please contact me at 800-828-8297 option 8.

Sincerely,
John Deere Financial



EXHIBIT
tabbies
3

RECEIVED
APR 18 2022
JOHN DEERE FINANCIAL

JOHN DEERE FINANCIAL

C&F Business or Commercial Use
Application ID: 13601801
Version Number: 3
FIXED RATE CONTRACT

# LOAN CONTRACT - SECURITY AGREEMENT

Contract Begin Date : 04/06/2022

| SELLER'S NAME AND ADDRESS | DEALER NUMBER | PHONE NUMBER |
|---|---|---|
| FLINT EQUIPMENT COMPANY<br>1206 BLAYLOCK STREET<br>ALBANY, GA 31705 | | 229-888-1212 |

| BORROWER'S NAME AND PHYSICAL ADDRESS | BORROWER'S TAX ID NUMBER | BORROWER'S PHONE NO. | TYPE OF BUSINESS |
|---|---|---|---|
| SOUTHERN TRUCKING COMPANY L.L.C<br>2136 GA HIGHWAY 93 S LOT 2<br>CAIRO, GA 39828-6976 | **-***8609 | -6932 | Limited Liability Company |
| BORROWER RESIDES IN (County/State)<br>GRADY, GA | BORROWER AGREES TO KEEP GOODS IN (County/State)<br>GRADY, GA | | |
| NAME AND TITLE OF SIGNING OFFICER<br>JARED HEATH EVANS - Member | | | |

| CO-BORROWER'S NAME AND PHYSICAL ADDRESS | CO-BORROWER'S SOC. SEC. NUMBER | CO-BORROWER'S PHONE NO. | TYPE OF BUSINESS |
|---|---|---|---|
| JARED HEATH EVANS<br># 2 2136 GA HIGHWAY 93 S<br>CAIRO, GA 39828 | ***-**-9796 | 874 | |

**1. Parties.** This Loan Contract-Security Agreement ("Contract") is entered into between John Deere Construction & Forestry Company ("we", "us" or "our") and the borrower(s) indicated above ("you" or "your"). If more than one borrower is indicated, each borrower shall be jointly and severally liable for all of the obligations under this Contract.

**2. Loan.** You hereby apply for a loan in the Amount Financed shown below, which, if accepted by us, the loan will be (a) subject to the terms and conditions set forth in this Contract, and (b) used to finance the balance due on the purchase from the Seller of the equipment and/or services described below (the "Equipment"). All attachments and accessories itemized on this Contract and all replacements, parts and repairs to the Equipment shall form part of the Equipment.

**3. Installment Payments.** In addition to any down payment, you agree to pay us the Amount Financed, together with finance charges from the Date Finance Charge Begins, at the Annual Percentage Rate, by remitting each of the Installment Payments on or before the due dates indicated. Any amounts applied to this Contract will be applied first to any late charges, any charges for dishonored checks and any other fees or costs due under this agreement, then to finance charges, computed on the date the payment is received and the remainder to the Amount Financed. You agree that your payments will be applied as of the date of receipt if received by 11:00 a.m. Central Time Monday through Friday (otherwise next business day); but if payment is not accompanied by the payment stub, is not in the envelope we provided, includes other items such as other checks, staples or paper clips, or is not received at that location, credit may be delayed up to five days. This Contract is not accepted by us until we sign it, even if you have made a payment to us. You agree to remit to us the Installment Payments and all other amounts when due and payable each Billing Period, even if we do not send you a bill or an invoice. **YOUR PAYMENT OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL, AND ARE NOT SUBJECT TO CANCELLATION, REDUCTION OR SETOFF FOR ANY REASON WHATSOEVER.** For any scheduled payment which is not received by its due date, you agree to pay us interest on the unpaid amount at a rate of 20% per annum on that scheduled payment, but in no event more than the maximum lawful rate, from the due date until paid. Restrictive endorsements on checks you send to us will not change or reduce your obligations to us. We will not lose any rights if we accept late or partial payments or delay enforcing our rights under this Contract. If a check or electronic payment authorization you give us is dishonored upon first presentment, you agree to pay us a fee of $25.00, or the maximum amount permitted by law, whichever is less. Installment Payments and other payments, including proceeds of insurance or any sale of the Equipment, may be applied, at our discretion and in spite of any instructions you may provide, to any obligation you may have to us or any of our affiliates. If the total of all payments made by you exceeds the total of all amounts due under this Contract by less than $25.00, we may retain such excess.

**THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE**



EXHIBIT
tabbies
4

| *EQUIPMENT PURCHASED* | | | | |
|---|---|---|---|---|
| QTY | NEW/ USED | MANUFACTURER | EQUIPMENT DESCRIPTION | AMOUNT |
| 1 | NEW | MAXI-LOAD SCALE SYSTEMS | 089-SCALE SYSTEM | $34,750.00 |
| PRODUCT ID NO. 2553 | | | | |

| *TRADE-IN and CASH DOWN PAYMENT* | | | | | |
|---|---|---|---|---|---|
| QTY | MFR. | MODEL | DESCRIPTION OF TRADE-IN (From Purchase Order) | PRODUCT ID NO. | AMOUNT |
| | | | | TOTAL TRADE-IN: | $0.00 |
| | | | | CASH DOWN PAYMENT: | $4,000.00 |
| | | | | RENTAL APPLIED: | $0.00 |
| | | | | TOTAL TRADE-IN PLUS CASH DOWN: | $4,000.00 |

| *INSTALLMENT PAYMENTS* | | |
|---|---|---|
| DATE FINANCE CHARGE BEGINS: **April 6, 2022** | | |
| *The first Installment Payment Due Date is May 6, 2022 and each successive Installment Payment is due on the same day of the Month thereafter, (the "Billing Period"), unless otherwise provided below;* | | |
| NUMBER OF PAYMENTS | AMOUNT OF EACH PAYMENT | DUE DATE |
| 36 | $1,012.38 | May 6, 2022 |

The amounts shown below as Finance Charge, Total of Payments and Total Sale Price are estimates based upon the assumption that payments will be made on the scheduled payment due date according to the installment schedule. The actual Finance Charge, Total of Payments, and Total Sale Price may vary depending upon the early or late payment of scheduled installments.

| *ITEMIZATION OF AMOUNT FINANCED* | | |
|---|---|---|
| SALES TAX (Paid to Govt. Agencies) | | $0.00 |
| CASH PRICE (Including Tax) | 1 | $34,750.00 |
| TOTAL DOWN PAYMENT (Sum of Trade-In & Cash Down Payment) | 2 | $4,000.00 |
| UNPAID BALANCE OF CASH PRICE (The amount credited to your account with us) | 3 | $30,750.00 |
| INSURANCE (Physical Damage Paid to Insurance Companies) | 4 | $344.00 |
| ORIGINATION FEES | 4A | $500.00 |
| OFFICIAL FEES (Paid to Public Officials) | 5 | $50.00 |
| AMOUNT FINANCED (Lines 3, 4, 4A, 5 & 5A (If Applicable) ) The amount of credit provided to you. | 6 | $31,644.00 |
| FINANCE CHARGE (Based on Line 6) The dollar amount the credit will cost you. | 7 | $4,801.68 |
| TOTAL OF PAYMENTS (Lines 6 & 7) The amount you will have paid after you have made all payments as scheduled. | 8 | $36,445.68 |
| ANNUAL PERCENTAGE RATE (The cost of your credit as a yearly rate) | | 9.40% |
| TOTAL SALE PRICE (Lines 1, 4, 4A, 5, 5A (If Applicable), & 7) The total price of your purchase on credit, including the Total Down Payment of $4,000.00. | | $40,445.68 |

**4. Prepayment.** You may prepay your obligations under this Contract in full at any time by paying the unpaid principal balance and any earned and unpaid finance charges. The unpaid principal balance includes any origination fee.

**THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE**

**5. Security Interest; Missing Information.** You grant us and our affiliates a security interest in the Equipment (and all proceeds thereof) to secure all of your obligations under this Contract and any other obligations which you may have to us or any of our affiliates or assignees at any time and you agree that any security interest you have granted or hereafter grant to us or any of our affiliates shall also secure your obligations under this Contract. You agree that we may act as agent for our affiliates and our affiliates may act as agent for us, in order to perfect and realize on any security interest described above. Upon receipt of all amounts due and to become due under this Contract, we will release our security interest in the Equipment (but not the security interest for amounts due an affiliate), provided no event of default has occurred and is continuing. You agree to keep the Equipment free and clear of all liens and encumbrances, except those in favor of us and our affiliates as described above, and to promptly notify us if a lien or encumbrance is placed or threatened against the Equipment. You irrevocably authorize us, at any time, to (a) insert or correct information on this Contract, including your correct legal name, serial numbers and Equipment descriptions; (b) submit notices and proofs of loss for any required insurance; (c) endorse your name on remittances for insurance and Equipment sale or lease proceeds; and (d) file a financing statement(s) which describes either the Equipment or all equipment currently or in the future financed by us. Notwithstanding any other election you may make, you agree that (1) we can access, retain and use, at any times we elect, any information regarding the location, maintenance, operation and condition of the Equipment; (2) you irrevocably authorize anyone in possession of that information to provide all of that information to us upon our request until our security interest in the Equipment is terminated; (3) you will not disable or otherwise interfere with any information gathering or transmission device within or attached to the Equipment; and (4) we may reactivate any such device.

**6. Equipment Maintenance, Operation and Use.** You agree to (a) **USE THE EQUIPMENT ONLY FOR AGRICULTURAL, BUSINESS OR COMMERCIAL PURPOSES AND NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES;** (b) operate and maintain the Equipment in accordance with all (1) applicable laws, ordinances and regulations, (2) manuals and other instructions issued by the manufacturer(s) and supplier(s), including any warranty coverage requirements and (3) insurance policy terms and requirements; (c) keep the Equipment in as good a condition as when delivered to you, reasonable wear excepted, including performing (at your own expense) all necessary maintenance and repairs; (d) allow us and our agent(s) to inspect the Equipment and all of your records related to its use, maintenance and repair, at any reasonable time; and (e) not permit the Equipment to be used by, or to be in the possession of, anyone other than you or your employees.

**7. Insurance.** You agree, at your cost, to maintain all-risk insurance coverage with respect to the Equipment for no less than its full replacement value, naming us (and our successor and assigns) as sole loss payee. You may choose who provides that insurance, but that insurance must be with companies and policies acceptable to us. Your obligation to insure the Equipment continues until all your other obligations under this Contract are satisfied. Each insurance policy must provide that (1) our interest in the policy will not be invalidated by any act, omission, breach or neglect of anyone other than us; (2) the insurer will give us at least 30 days' prior written notice before any cancellation of, non-renewal of, or material change to, the policy; and (3) such coverage shall be primary over any insurance purchased by us (or our affiliates).

Unless you provide us with evidence of the required insurance coverage's, we may, but are not required to, purchase insurance, at your expense, to protect our interests in the Equipment and charge you an insurance fee on which we may make a profit. This insurance may not (1) protect your interests; or (2) pay any claim that you make or any claim that is made against you in connection with the Equipment. You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained the insurance required by this Contract. **THE COST OF THE INSURANCE MAY BE MORE THAN THE COST OF THE INSURANCE YOU MAY BE ABLE TO OBTAIN ON YOUR OWN. THE COVERAGES OF THAT INSURANCE MAY BE DIFFERENT FROM THE COVERAGES OF INSURANCE YOU MAY BE ABLE TO OBTAIN ON YOUR OWN.** You agree to pay us the cost of any insurance plus a $150 insurance placement and service fee. You will immediately pay that amount to us or we may, at our sole discretion, add that cost to the Account Balance and increase the required Installment Payments accordingly.

If a default occurs, you authorize us to cancel the insurance on the Equipment and apply any returned premiums to the Account Balance.

If the cost of the insurance was included in the Amount Financed, that insurance will terminate (a) if your debt to us is discharged, (b) if we release our security interest in the Equipment, (c) if a default occurs and we cancel the insurance, (d) if the Equipment is repossessed, (e) if the Floater Policy under which you purchased that insurance terminates, or (f) on the due date of the final scheduled Installment Payment.

**THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE**

**8. Loss or Damage.** Until all of your obligations under this Contract are satisfied, you are responsible for all risk of loss and damage, loss, theft, destruction or seizure of the Equipment (an "Event of Loss"). You must promptly notify us of any Event of Loss. If the Equipment can be repaired or replaced, you agree to promptly repair or replace the Equipment, at your cost, and the terms of this Contract will continue to apply. If the Equipment cannot be repaired or replaced, you agree to immediately pay us the Account Balance. Upon receipt of the Account Balance, we will release our security interest in the Equipment. All insurance proceeds must be paid directly to us, and we may apply any excess insurance proceeds to any other amounts you owe us or any of our affiliates.

**9. Default.** We may determine you to be in default if: (a) you fail to remit to us any Installment Payment or other payment when due; (b) you breach any other provision of this Contract; (c) you remove any Equipment from the United States; (d) a petition is filed by or against you or any guarantor under any bankruptcy, attachment, execution or insolvency law or you or any such guarantor make an assignment for the benefit of creditors; (e) a default occurs under any other agreement between you (or any of your affiliates) and us (or any of our affiliates); (f) you or any guarantor merges with or consolidates into another entity, sells substantially all its assets, dissolves or terminates its existence, or (if an individual) dies or becomes incompetent; (g) you fail to maintain the insurance required by this Contract; or (h) if for any reason, we deem the debt or the Equipment to be insecure. Time is of the essence under this Contract.

**10. Remedies.** If we determine that you are in default, we may do one or more of the following: (a) recover from you, AS LIQUIDATED DAMAGES FOR LOSS OF BARGAIN AND NOT AS A PENALTY, the Account Balance as of the date of such default, without presentment or demand; (b) declare any other agreements between you and us in default; (c) terminate any of your rights (but none of your obligations) under this Contract and any other agreement between you and us (or any of our affiliates); (d) require you to deliver the Equipment to us in the manner outlined below, or take possession of the Equipment; (e) lease or sell the Equipment or any portion thereof at a public or private sale; (f) apply the net proceeds we receive from any sale, lease or other disposition of the Equipment (after deducting all of our costs and expenses) to your obligations under this Contract, with you remaining liable for any deficiency; (g) require you to reimburse and indemnify us for all losses, claims, damages and expenses of any kind or nature whatsoever incurred in connection with the Equipment or this Contract and/or the enforcement of our remedies hereunder including, without limitation, repossession, repair and collection costs, damage awards, attorneys' fees and court and bankruptcy fees and costs; (h) exercise any other remedy available at law or in equity; and (i) take on your behalf (at your expense) any action required by this Contract which you fail to take. These remedies are cumulative, are in addition to any other remedies provided for by law, and may be exercised concurrently or separately. Any failure or delay by us to exercise any right shall not operate as a waiver of any other right or future right. In no event will the costs and expenses referred to in this section be more than those allowed by law.

If we determine that you are in default, all Equipment must be delivered to the place designated by us, at your expense and in satisfactory condition, along with all use, maintenance and repair records. Equipment is in satisfactory condition if it is in as good a condition as when the Equipment was delivered to you, reasonable wear excepted, as determined by us in our sole discretion.

**11. Assignment.** You will not assign, pledge or otherwise transfer any of your rights or interests in this Contract or any Equipment without our prior written consent. Any assignment without our consent will be void. We may assign this Contract or our interest in the Equipment at any time without notice to you and without your consent. We may provide information about you to any prospective assignee or participant. You agree not to assert against our assignee any claims, offsets or defenses which you may have against us.

**12. Representations and Warranties.** You represent, warrant and covenant to us so long as this Contract is in effect, that: (a) you will not change your name without giving us at least 30 days' prior written notice; (b) each document you sign and deliver to us is duly authorized, executed and delivered by you, and is your valid, legal and binding agreement, enforceable in accordance with its terms; (c) the execution, delivery and performance by you of this Contract does not (and will not) violate any applicable law or breach any order of court or other governmental agency, or of any undertaking you are a party to or by which you or any of your properties are bound; (d) you will comply with all applicable laws, ordinances and regulations; (e) upon execution of this Contract, the Seller shall have good and marketable title to any trade-in equipment free and clear of all liens and encumbrances whatsoever, (f) all information you have given to us is true, accurate and complete; (g) since the date of the most recent financial information given to us, no material adverse change in your business, assets, or prospects has occurred; (h) you will promptly deliver to us such financial statements, reports and other information as we may request; (i) the Equipment was selected by you; (j) the Equipment (including all manufacturer manuals and instructions) has been delivered to, and examined by, you; (k) the safe operation and the proper servicing of the Equipment were explained to you; (l) you received the written warranty applicable to the Equipment and understand that your rights under the written warranty may be limited; (m) the Equipment is unconditionally and irrevocably accepted by you as being suitable for its intended use; (n) the Equipment is in good condition and repair (operating and otherwise); (o) the Equipment shall be used only for the purpose indicated herein, will remain in your possession and will not be sold, rented or leased; and (p) you will pay all taxes assessed on the Equipment.

Unless you are an individual, you also represent, warrant and covenant to us that: (a) you are and will remain duly organized, validly existing and in good standing under the laws of your jurisdiction of organization; (b) you are qualified to do business under the laws of all other jurisdictions where qualification is required or advisable; (c) you will not change your jurisdiction of organization or organization type without at least 30 days' prior written notice to us; and (d) the execution, delivery and performance by you of this Contract will not breach any provision of your organizational documents.

If you are an individual, you agree not to move your residence to a different county or state without at least 30 days' prior written notice to us.

**13. Governing Law; Jurisdiction; Venue. THIS CONTRACT WILL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF IOWA, WHERE THIS CONTRACT IS ACCEPTED AND ENTERED INTO,** except for its conflict of laws provisions. You irrevocably submit to the non-exclusive jurisdiction and venue of federal and state courts located in Des Moines, Iowa and will not claim it is an inconvenient forum for legal action. **YOU AND WE IRREVOCABLY WAIVE ANY RIGHT YOU AND WE MAY HAVE TO A JURY TRIAL.** However, you acknowledge that any Iowa state law compulsory mediation requirements will apply to this agreement or the Equipment only if you are a resident of the State of Iowa.

**14. Miscellaneous. WE HAVE NOT MADE, AND DO NOT MAKE, ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AS TO THE EQUIPMENT'S MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, SUITABILITY, OR OTHERWISE. WE ARE NOT LIABLE FOR CONSEQUENTIAL OR SPECIAL DAMAGES.** You acknowledge that the Seller of the Equipment is not an agent of ours, or authorized to act for or bind us. You agree not to withhold any amount you owe us if you believe you have a claim against us, the Seller, or any manufacturer(s) of the Equipment, but to pursue that claim independently. Any claim you have against us must be made within two years after the event that caused it. All notices must be in writing and will be deemed given 5 days after mailing to the intended recipient at its address indicated above, unless changed by a notice given in accordance with this Section. This Contract supersedes and replaces all prior understandings and communications (oral or written) concerning the subject matter thereof. No part of this Contract can be amended, waived or terminated except by a writing signed by both you and us. This Contract may be signed in separate counterparts that, together, will constitute one document. A paper or facsimile transmission copy of your signature or an electronic signature shall constitute an original signature under applicable law for all purposes. If a court finds any part of this Contract to be invalid or unenforceable, the remainder of this Contract will remain in effect. You permit us, and those third parties who provide services to us, to monitor and record telephone conversations between you and us. You agree that by providing us any telephone number, including a mobile phone number, we, any debt collector we retain, and those third parties who provide services to us, can contact you using that number, including calls using an automatic dialing and announcing device and prerecorded calls. All of our rights shall remain in effect after the expiration or termination of this Contract. Any origination fee will be paid to the dealer or us and is not a document preparation fee and all documents you sign will be prepared by John Deere Financial and not by the dealer.

You and we intend to comply with all applicable laws. In no event will we charge or collect any amounts in excess of those allowed by applicable law. In the event any amount in excess of that allowed by law is charged or recovered, any such charge will be deemed limited by the amount legally allowed and any amount received by us in excess of that legally allowed will be applied by us to the payment of amounts legally allowed under this Contract, or refunded to you.

**PHYSICAL DAMAGE INSURANCE REQUIRED: If you elect Physical Damage Insurance below, such insurance does not include liability insurance coverage for bodily injury or property damage caused to others.**

| | | |
|---|---|---|
| **INSURANCE DISCLOSURES:** You may obtain property insurance from any agent that is acceptable to us. Physical Damage Insurance will not be provided unless you sign below for the premium amount indicated. | TERM IN MONTHS 36 | TOTAL PREMIUM $344.00 |
| **By signing below, you want Physical Damage Insurance and agree to pay the premium. (Sign in this box)** X [signature] JARED HEATH EVANS, Member | | |

**THE TERMS OF THIS CONTRACT SHOULD BE READ CAREFULLY BEFORE SIGNING BECAUSE ONLY THESE WRITTEN TERMS ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES MAY BE LEGALLY ENFORCED. BY SIGNING THIS CONTRACT, YOU AGREE TO THE TERMS ON ALL PAGES. THIS CONTRACT IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN YOU AND US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.**

**I agree that I have received a completely filled in copy of this Agreement.**

SOUTHERN TRUCKING COMPANY L.L.C

4/1/22
(Date Signed)

By: [signature]
JARED HEATH EVANS, Member

**THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE**

4/11/22 X

(Date Signed) JARED HEATH EVANS, Individually

Accepted By: **John Deere Construction & Forestry Company (Lender)**
**6400 NW 86th Street, Johnston, IA 50131-6600**

By:

(Date Agreement Signed) (Authorized Signature)

**THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE**

GSCCCA eFile1: EF_007838231_001397017_002 Received:Monday, April 25, 2022 11:14:18 AM Page 1 of 1

[redacted]

FILED & RECORDED
Monday, April 25, 2022 11:20:59 AM
File Number: 002-2022-004651
Cynthia G. Dillingham
Atkinson County Clerk of Superior Court

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
**UCC DEPARTMENT 8884278713**

B. E-MAIL CONTACT AT FILER (optional)
**JDFUCCFilings@JohnDeere.com**

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

**JOHN DEERE FINANCIAL**
**6400 NW 86TH STREET**
**PO BOX 6630**
**JOHNSTON, IA 50131**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

1a. ORGANIZATION'S NAME
**SOUTHERN TRUCKING COMPANY L.L.C**

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |
| **1c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| **2136 GA HIGHWAY 93 S LOT 2** | **CAIRO** | **GA** | **39828** | **US** |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

2a. ORGANIZATION'S NAME

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| **EVANS** | **JARED** | **HEATH** | | |
| **2c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| **# 2 2136 GA HIGHWAY 93 S** | **CAIRO** | **GA** | **39828** | **US** |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

3a. ORGANIZATION'S NAME
**JOHN DEERE CONSTRUCTION & FORESTRY COMPANY**

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |
| **3c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| **6400 NW 86TH ST** | **JOHNSTON** | **IA** | **50131** | **US** |

4. COLLATERAL: This financing statement covers the following collateral:

**MAXI-LOAD SCALE SYSTEMS 089 089-SCALE SYSTEM S/N: 2553**

**together with (1) all attachments, accessories and components, repairs and improvements, (2) all accounts, general intangibles, contract rights and chattel paper relating thereto, and (3) all proceeds, thereto including, without limitation, insurance, sale, lease and rental proceeds, and proceeds of proceeds.**

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
**GA 4855182 04/23/2022**

FILING OFFICE COPY - UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

EXHIBIT
tabbies
5

RECEIVED
JUL 18 2022
JOHN DEERE FINANCIAL

JOHN DEERE FINANCIAL

C&F Business or Commercial Use
Application ID: 13701393
Version Number: 6
FIXED RATE CONTRACT

# LOAN CONTRACT - SECURITY AGREEMENT

Contract Begin Date : 07/11/2022

| SELLER'S NAME AND ADDRESS | DEALER NUMBER | PHONE NUMBER |
|---|---|---|
| FLINT EQUIPMENT COMPANY<br>1206 BLAYLOCK STREET<br>ALBANY, GA 31705 | | 229-888-1212 |

| BORROWER'S NAME AND PHYSICAL ADDRESS | BORROWER'S TAX ID NUMBER | BORROWER'S PHONE NO. | TYPE OF BUSINESS |
|---|---|---|---|
| SOUTHERN TRUCKING COMPANY L.L.C<br>2136 GA HIGHWAY 93 S LOT 2<br>CAIRO, GA 39828-6976 | **-***8609 | 6932 | Limited Liability Company |
| BORROWER RESIDES IN (County/State): GRADY, GA | BORROWER AGREES TO KEEP GOODS IN (County/State): GRADY, GA | | |
| NAME AND TITLE OF SIGNING OFFICER: JARED HEATH EVANS - Member | | | |

| CO-BORROWER'S NAME AND PHYSICAL ADDRESS | CO-BORROWER'S SOC. SEC. NUMBER | CO-BORROWER'S PHONE NO. | TYPE OF BUSINESS |
|---|---|---|---|
| JARED HEATH EVANS<br># 2 2136 GA HIGHWAY 93 S<br>CAIRO, GA 39828 | ***-**-9796 | 8874 | |

**1. Parties.** This Loan Contract-Security Agreement ("Contract") is entered into between John Deere Construction & Forestry Company ("we", "us" or "our") and the borrower(s) indicated above ("you" or "your"). If more than one borrower is indicated, each borrower shall be jointly and severally liable for all of the obligations under this Contract.

**2. Loan.** You hereby apply for a loan in the Amount Financed shown below, which, if accepted by us, the loan will be (a) subject to the terms and conditions set forth in this Contract, and (b) used to finance the balance due on the purchase from the Seller of the equipment and/or services described below (the "Equipment"). All attachments and accessories itemized on this Contract and all replacements, parts and repairs to the Equipment shall form part of the Equipment.

**3. Installment Payments.** In addition to any down payment, you agree to pay us the Amount Financed, together with finance charges from the Date Finance Charge Begins, at the Annual Percentage Rate, by remitting each of the Installment Payments on or before the due dates indicated. Any amounts applied to this Contract will be applied first to any late charges, any charges for dishonored checks and any other fees or costs due under this agreement, then to finance charges, computed on the date the payment is received and the remainder to the Amount Financed. You agree that your payments will be applied as of the date of receipt if received by 11:00 a.m. Central Time Monday through Friday (otherwise next business day); but if payment is not accompanied by the payment stub, is not in the envelope we provided, includes other items such as other checks, staples or paper clips, or is not received at that location, credit may be delayed up to five days. This Contract is not accepted by us until we sign it, even if you have made a payment to us. You agree to remit to us the Installment Payments and all other amounts when due and payable each Billing Period, even if we do not send you a bill or an invoice. **YOUR PAYMENT OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL, AND ARE NOT SUBJECT TO CANCELLATION, REDUCTION OR SETOFF FOR ANY REASON WHATSOEVER.** For any scheduled payment which is not received by its due date, you agree to pay us interest on the unpaid amount at a rate of 20% per annum on that scheduled payment, but in no event more than the maximum lawful rate, from the due date until paid. Restrictive endorsements on checks you send to us will not change or reduce your obligations to us. We will not lose any rights if we accept late or partial payments or delay enforcing our rights under this Contract. If a check or electronic payment authorization you give us is dishonored upon first presentment, you agree to pay us a fee of $25.00, or the maximum amount permitted by law, whichever is less. Installment Payments and other payments, including proceeds of insurance or any sale of the Equipment, may be applied, at our discretion and in spite of any instructions you may provide, to any obligation you may have to us or any of our affiliates. If the total of all payments made by you exceeds the total of all amounts due under this Contract by less than $25.00, we may retain such excess.

**THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE**



EXHIBIT 6

*EQUIPMENT PURCHASED*

| QTY | NEW/ USED | MANUFACTURER | EQUIPMENT DESCRIPTION | AMOUNT |
|---|---|---|---|---|
| 1 | USED | JOHN DEERE | 437E LOG LOADER | $193,498.00 |
| PRODUCT ID NO. 1T0437EDLJF342341 | | | | |
| 1 | USED | CSI | PTD-264 Delimber | $1.00 |
| PRODUCT ID NO. 26419015416 | | | | |
| 1 | USED | BIG-JOHN | 148-LTDK Log Trailer | $1.00 |
| PRODUCT ID NO. 1B9MC4821KFBJ7411 | | | | |
| 1 | | | Physical Damage Insurance Premium | $16,587.05 |

*TRADE-IN and CASH DOWN PAYMENT*

| QTY | MFR. | MODEL | DESCRIPTION OF TRADE-IN (From Purchase Order) | PRODUCT ID NO. | AMOUNT |
|---|---|---|---|---|---|
| 1 | BARKO | 495 | **Log Loader**<br>Allowance: **$55,000.00** Payoff Amount: **$51,272.57**<br>Lien Holder: **John Deere Financial**<br>Payoff Account: **702**<br>Phone Number: | 11349524077 | $3,727.43 |

| | |
|---|---|
| TOTAL TRADE-IN: | $3,727.43 |
| CASH DOWN PAYMENT: | $5,000.00 |
| RENTAL APPLIED: | $0.00 |
| TOTAL TRADE-IN PLUS CASH DOWN: | $8,727.43 |

*INSTALLMENT PAYMENTS*

DATE FINANCE CHARGE BEGINS: **July 11, 2022**

*The first Installment Payment Due Date is August 21, 2022 and each successive Installment Payment is due on the same day of the Month thereafter, (the "Billing Period"), unless otherwise provided below;*

| NUMBER OF PAYMENTS | AMOUNT OF EACH PAYMENT | DUE DATE |
|---|---|---|
| 36 | $6,705.95 | August 21, 2022 |

The amounts shown below as Finance Charge, Total of Payments and Total Sale Price are estimates based upon the assumption that payments will be made on the scheduled payment due date according to the installment schedule. The actual Finance Charge, Total of Payments, and Total Sale Price may vary depending upon the early or late payment of scheduled installments.

*ITEMIZATION OF AMOUNT FINANCED*

| | | |
|---|---|---|
| SALES TAX (Paid to Govt. Agencies) | | $0.00 |
| CASH PRICE (Including Tax) | 1 | $210,087.05 |
| TOTAL DOWN PAYMENT (Sum of Trade-In & Cash Down Payment) | 2 | $8,727.43 |
| UNPAID BALANCE OF CASH PRICE (The amount credited to your account with us) | 3 | $201,359.62 |
| INSURANCE (Physical Damage Paid to Insurance Companies) | 4 | $0.00 |
| ORIGINATION FEES | 4A | $500.00 |
| OFFICIAL FEES (Paid to Public Officials) | 5 | $50.00 |
| AMOUNT FINANCED (Lines 3, 4, 4A, 5 & 5A (If Applicable) ) The amount of credit provided to you. | 6 | $201,909.62 |
| FINANCE CHARGE (Based on Line 6) The dollar amount the credit will cost you. | 7 | $39,504.58 |
| TOTAL OF PAYMENTS (Lines 6 & 7) The amount you will have paid after you have made all payments as scheduled. | 8 | $241,414.20 |
| ANNUAL PERCENTAGE RATE (The cost of your credit as a yearly rate) | | 11.75% |
| TOTAL SALE PRICE (Lines 1, 4, 4A, 5, 5A (If Applicable), & 7) The total price of your purchase on credit, including the Total Down Payment of $8,727.43. | | $250,141.63 |

**4. Prepayment.** You may prepay your obligations under this Contract in full at any time by paying the unpaid principal balance and any earned and unpaid finance charges. The unpaid principal balance includes any origination fee.

**THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE**

**5. Security Interest; Missing Information**. You grant us and our affiliates a security interest in the Equipment (and all proceeds thereof) to secure all of your obligations under this Contract and any other obligations which you may have to us or any of our affiliates or assignees at any time and you agree that any security interest you have granted or hereafter grant to us or any of our affiliates shall also secure your obligations under this Contract. You agree that we may act as agent for our affiliates and our affiliates may act as agent for us, in order to perfect and realize on any security interest described above. Upon receipt of all amounts due and to become due under this Contract, we will release our security interest in the Equipment (but not the security interest for amounts due an affiliate), provided no event of default has occurred and is continuing. You agree to keep the Equipment free and clear of all liens and encumbrances, except those in favor of us and our affiliates as described above, and to promptly notify us if a lien or encumbrance is placed or threatened against the Equipment. You irrevocably authorize us, at any time, to (a) insert or correct information on this Contract, including your correct legal name, serial numbers and Equipment descriptions; (b) submit notices and proofs of loss for any required insurance; (c) endorse your name on remittances for insurance and Equipment sale or lease proceeds; and (d) file a financing statement(s) which describes either the Equipment or all equipment currently or in the future financed by us. Notwithstanding any other election you may make, you agree that (1) we can access, retain and use, at any times we elect, any information regarding the location, maintenance, operation and condition of the Equipment; (2) you irrevocably authorize anyone in possession of that information to provide all of that information to us upon our request until our security interest in the Equipment is terminated; (3) you will not disable or otherwise interfere with any information gathering or transmission device within or attached to the Equipment; and (4) we may reactivate any such device.

**6. Equipment Maintenance, Operation and Use.** You agree to (a) **USE THE EQUIPMENT ONLY FOR AGRICULTURAL, BUSINESS OR COMMERCIAL PURPOSES AND NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES;** (b) operate and maintain the Equipment in accordance with all (1) applicable laws, ordinances and regulations, (2) manuals and other instructions issued by the manufacturer(s) and supplier(s), including any warranty coverage requirements and (3) insurance policy terms and requirements; (c) keep the Equipment in as good a condition as when delivered to you, reasonable wear excepted, including performing (at your own expense) all necessary maintenance and repairs; (d) allow us and our agent(s) to inspect the Equipment and all of your records related to its use, maintenance and repair, at any reasonable time; and (e) not permit the Equipment to be used by, or to be in the possession of, anyone other than you or your employees.

**7. Insurance.** You agree, at your cost, to maintain all-risk insurance coverage with respect to the Equipment for no less than its full replacement value, naming us (and our successor and assigns) as sole loss payee. You may choose who provides that insurance, but that insurance must be with companies and policies acceptable to us. Your obligation to insure the Equipment continues until all your other obligations under this Contract are satisfied. Each insurance policy must provide that (1) our interest in the policy will not be invalidated by any act, omission, breach or neglect of anyone other than us; (2) the insurer will give us at least 30 days' prior written notice before any cancellation of, non-renewal of, or material change to, the policy; and (3) such coverage shall be primary over any insurance purchased by us (or our affiliates).

Unless you provide us with evidence of the required insurance coverage's, we may, but are not required to, purchase insurance, at your expense, to protect our interests in the Equipment and charge you an insurance fee on which we may make a profit. This insurance may not (1) protect your interests; or (2) pay any claim that you make or any claim that is made against you in connection with the Equipment. You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained the insurance required by this Contract. **THE COST OF THE INSURANCE MAY BE MORE THAN THE COST OF THE INSURANCE YOU MAY BE ABLE TO OBTAIN ON YOUR OWN. THE COVERAGES OF THAT INSURANCE MAY BE DIFFERENT FROM THE COVERAGES OF INSURANCE YOU MAY BE ABLE TO OBTAIN ON YOUR OWN.** You agree to pay us the cost of any insurance plus a $150 insurance placement and service fee. You will immediately pay that amount to us or we may, at our sole discretion, add that cost to the Account Balance and increase the required Installment Payments accordingly.

If a default occurs, you authorize us to cancel the insurance on the Equipment and apply any returned premiums to the Account Balance.

If the cost of the insurance was included in the Amount Financed, that insurance will terminate (a) if your debt to us is discharged, (b) if we release our security interest in the Equipment, (c) if a default occurs and we cancel the insurance, (d) if the Equipment is repossessed, (e) if the Floater Policy under which you purchased that insurance terminates, or (f) on the due date of the final scheduled Installment Payment.

**THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE**

**8. Loss or Damage.** Until all of your obligations under this Contract are satisfied, you are responsible for all risk of loss and damage, loss, theft, destruction or seizure of the Equipment (an "Event of Loss"). You must promptly notify us of any Event of Loss. If the Equipment can be repaired or replaced, you agree to promptly repair or replace the Equipment, at your cost, and the terms of this Contract will continue to apply. If the Equipment cannot be repaired or replaced, you agree to immediately pay us the Account Balance. Upon receipt of the Account Balance, we will release our security interest in the Equipment. All insurance proceeds must be paid directly to us, and we may apply any excess insurance proceeds to any other amounts you owe us or any of our affiliates.

**9. Default.** We may determine you to be in default if: (a) you fail to remit to us any Installment Payment or other payment when due; (b) you breach any other provision of this Contract; (c) you remove any Equipment from the United States; (d) a petition is filed by or against you or any guarantor under any bankruptcy, attachment, execution or insolvency law or you or any such guarantor make an assignment for the benefit of creditors; (e) a default occurs under any other agreement between you (or any of your affiliates) and us (or any of our affiliates); (f) you or any guarantor merges with or consolidates into another entity, sells substantially all its assets, dissolves or terminates its existence, or (if an individual) dies or becomes incompetent; (g) you fail to maintain the insurance required by this Contract; or (h) if for any reason, we deem the debt or the Equipment to be insecure. Time is of the essence under this Contract.

**10. Remedies.** If we determine that you are in default, we may do one or more of the following: (a) recover from you, AS LIQUIDATED DAMAGES FOR LOSS OF BARGAIN AND NOT AS A PENALTY, the Account Balance as of the date of such default, without presentment or demand; (b) declare any other agreements between you and us in default; (c) terminate any of your rights (but none of your obligations) under this Contract and any other agreement between you and us (or any of our affiliates); (d) require you to deliver the Equipment to us in the manner outlined below, or take possession of the Equipment; (e) lease or sell the Equipment or any portion thereof at a public or private sale; (f) apply the net proceeds we receive from any sale, lease or other disposition of the Equipment (after deducting all of our costs and expenses) to your obligations under this Contract, with you remaining liable for any deficiency; (g) require you to reimburse and indemnify us for all losses, claims, damages and expenses of any kind or nature whatsoever incurred in connection with the Equipment or this Contract and/or the enforcement of our remedies hereunder including, without limitation, repossession, repair and collection costs, damage awards, attorneys' fees and court and bankruptcy fees and costs; (h) exercise any other remedy available at law or in equity; and (i) take on your behalf (at your expense) any action required by this Contract which you fail to take. These remedies are cumulative, are in addition to any other remedies provided for by law, and may be exercised concurrently or separately. Any failure or delay by us to exercise any right shall not operate as a waiver of any other right or future right. In no event will the costs and expenses referred to in this section be more than those allowed by law.

If we determine that you are in default, all Equipment must be delivered to the place designated by us, at your expense and in satisfactory condition, along with all use, maintenance and repair records. Equipment is in satisfactory condition if it is in as good a condition as when the Equipment was delivered to you, reasonable wear excepted, as determined by us in our sole discretion.

**11. Assignment.** You will not assign, pledge or otherwise transfer any of your rights or interests in this Contract or any Equipment without our prior written consent. Any assignment without our consent will be void. We may assign this Contract or our interest in the Equipment at any time without notice to you and without your consent. We may provide information about you to any prospective assignee or participant. You agree not to assert against our assignee any claims, offsets or defenses which you may have against us.

**12. Representations and Warranties.** You represent, warrant and covenant to us so long as this Contract is in effect, that: (a) you will not change your name without giving us at least 30 days' prior written notice; (b) each document you sign and deliver to us is duly authorized, executed and delivered by you, and is your valid, legal and binding agreement, enforceable in accordance with its terms; (c) the execution, delivery and performance by you of this Contract does not (and will not) violate any applicable law or breach any order of court or other governmental agency, or of any undertaking you are a party to or by which you or any of your properties are bound; (d) you will comply with all applicable laws, ordinances and regulations; (e) upon execution of this Contract, the Seller shall have good and marketable title to any trade-in equipment free and clear of all liens and encumbrances whatsoever, (f) all information you have given to us is true, accurate and complete; (g) since the date of the most recent financial information given to us, no material adverse change in your business, assets, or prospects has occurred; (h) you will promptly deliver to us such financial statements, reports and other information as we may request; (i) the Equipment was selected by you; (j) the Equipment (including all manufacturer manuals and instructions) has been delivered to, and examined by, you; (k) the safe operation and the proper servicing of the Equipment were explained to you; (l) you received the written warranty applicable to the Equipment and understand that your rights under the written warranty may be limited; (m) the Equipment is unconditionally and irrevocably accepted by you as being suitable for its intended use; (n) the Equipment is in good condition and repair (operating and otherwise); (o) the Equipment shall be used only for the purpose indicated herein, will remain in your possession and will not be sold, rented or leased; and (p) you will pay all taxes assessed on the Equipment.

Unless you are an individual, you also represent, warrant and covenant to us that: (a) you are and will remain duly organized, validly existing and in good standing under the laws of your jurisdiction of organization; (b) you are qualified to do business under the laws of all other jurisdictions where qualification is required or advisable; (c) you will not change your jurisdiction of organization or organization type without at least 30 days' prior written notice to us; and (d) the execution, delivery and performance by you of this Contract will not breach any provision of your organizational documents.

If you are an individual, you agree not to move your residence to a different county or state without at least 30 days' prior written notice to us.

**13. Governing Law; Jurisdiction; Venue. THIS CONTRACT WILL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF IOWA, WHERE THIS CONTRACT IS ACCEPTED AND ENTERED INTO,** except for its conflict of laws provisions. You irrevocably submit to the non-exclusive jurisdiction and venue of federal and state courts located in Des Moines, Iowa and will not claim it is an inconvenient forum for legal action. **YOU AND WE IRREVOCABLY WAIVE ANY RIGHT YOU AND WE MAY HAVE TO A JURY TRIAL.** However, you acknowledge that any Iowa state law compulsory mediation requirements will apply to this agreement or the Equipment only if you are a resident of the State of Iowa.

**14. Miscellaneous. WE HAVE NOT MADE, AND DO NOT MAKE, ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AS TO THE EQUIPMENT'S MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, SUITABILITY, OR OTHERWISE. WE ARE NOT LIABLE FOR CONSEQUENTIAL OR SPECIAL DAMAGES.** You acknowledge that the Seller of the Equipment is not an agent of ours, or authorized to act for or bind us. You agree not to withhold any amount you owe us if you believe you have a claim against us, the Seller, or any manufacturer(s) of the Equipment, but to pursue that claim independently. Any claim you have against us must be made within two years after the event that caused it. All notices must be in writing and will be deemed given 5 days after mailing to the intended recipient at its address indicated above, unless changed by a notice given in accordance with this Section. This Contract supersedes and replaces all prior understandings and communications (oral or written) concerning the subject matter thereof. No part of this Contract can be amended, waived or terminated except by a writing signed by both you and us. This Contract may be signed in separate counterparts that, together, will constitute one document. A paper or facsimile transmission copy of your signature or an electronic signature shall constitute an original signature under applicable law for all purposes. If a court finds any part of this Contract to be invalid or unenforceable, the remainder of this Contract will remain in effect. You permit us, and those third parties who provide services to us, to monitor and record telephone conversations between you and us. You agree that by providing us any telephone number, including a mobile phone number, we, any debt collector we retain, and those third parties who provide services to us, can contact you using that number, including calls using an automatic dialing and announcing device and prerecorded calls. All of our rights shall remain in effect after the expiration or termination of this Contract. Any origination fee will be paid to the dealer or us and is not a document preparation fee and all documents you sign will be prepared by John Deere Financial and not by the dealer.

You and we intend to comply with all applicable laws. In no event will we charge or collect any amounts in excess of those allowed by applicable law. In the event any amount in excess of that allowed by law is charged or recovered, any such charge will be deemed limited by the amount legally allowed and any amount received by us in excess of that legally allowed will be applied by us to the payment of amounts legally allowed under this Contract, or refunded to you.

**PHYSICAL DAMAGE INSURANCE REQUIRED: If you elect Physical Damage Insurance below, such insurance does not include liability insurance coverage for bodily injury or property damage caused to others.**

| INSURANCE DISCLOSURES | TERM IN MONTHS | TOTAL PREMIUM |
|---|---|---|
| **INSURANCE DISCLOSURES:** You may obtain property insurance from any agent that is acceptable to us. Physical Damage Insurance will not be provided unless you sign below for the premium amount indicated. | 36 | $16,587.05 |
| **By signing below, you want Physical Damage Insurance and agree to pay the premium. (Sign in this box)**<br>X [signature]<br>JARED HEATH EVANS, Member | | |

**THE TERMS OF THIS CONTRACT SHOULD BE READ CAREFULLY BEFORE SIGNING BECAUSE ONLY THESE WRITTEN TERMS ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES MAY BE LEGALLY ENFORCED. BY SIGNING THIS CONTRACT, YOU AGREE TO THE TERMS ON ALL PAGES. THIS CONTRACT IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN YOU AND US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.**

**I agree that I have received a completely filled in copy of this Agreement.**

SOUTHERN TRUCKING COMPANY L.L.C

7/8/22 By: [signature]
(Date Signed) JARED HEATH EVANS, Member

**THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE**

7/12/22 X

(Date Signed) JARED HEATH EVANS, Individually

Accepted By: **John Deere Construction & Forestry Company (Lender)**
**6400 NW 86th Street, Johnston, IA 50131-6600**

By:

(Date Agreement Signed) (Authorized Signature)

**THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE**

GSCCCA eFile1: EF 008378949 001470715_002 Received:Monday, July 25, 2022 8:36:12 AM Page 1 of 1

[redacted]

FILED & RECORDED
Monday, July 25, 2022 8:45:49 AM
File Number: 002-2022-007951
Cynthia G. Dillingham
Atkinson County Clerk of Superior Court

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
**UCC DEPARTMENT 8884278713**

B. E-MAIL CONTACT AT FILER (optional)
**JDFUCCFilings@JohnDeere.com**

C. SEND ACKNOWLEDGMENT TO: (Name and Address)
**JOHN DEERE FINANCIAL**
**6400 NW 86TH STREET**
**PO BOX 6630**
**JOHNSTON, IA 50131**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | | |
|---|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME<br>**SOUTHERN TRUCKING COMPANY L.L.C** | | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX | |
| 1c. MAILING ADDRESS<br>**2136 GA HIGHWAY 93 S LOT 2** | CITY<br>**CAIRO** | STATE<br>**GA** | POSTAL CODE<br>**39828** | COUNTRY<br>**US** | |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | |
|---|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | | |
| OR 2b. INDIVIDUAL'S SURNAME<br>**EVANS** | FIRST PERSONAL NAME<br>**JARED** | ADDITIONAL NAME(S)/INITIAL(S)<br>**HEATH** | | SUFFIX |
| 2c. MAILING ADDRESS<br>**# 2 2136 GA HIGHWAY 93 S** | CITY<br>**CAIRO** | STATE<br>**GA** | POSTAL CODE<br>**39828** | COUNTRY<br>**US** |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| | | | | |
|---|---|---|---|---|
| 3a. ORGANIZATION'S NAME<br>**JOHN DEERE CONSTRUCTION & FORESTRY COMPANY** | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS<br>**6400 NW 86TH ST** | CITY<br>**JOHNSTON** | STATE<br>**IA** | POSTAL CODE<br>**50131** | COUNTRY<br>**US** |

4. COLLATERAL: This financing statement covers the following collateral:

**JOHN DEERE 437E 437E LOG LOADER S/N: 342341**
**CSI PTD2 PTD-264 Delimber S/N: 015416**
**BIG-JOHN 148L 148-LTDK Log Trailer S/N: BJ7411**

**together with (1) all attachments, accessories and components, repairs and improvements, (2) all accounts, general intangibles, contract rights and chattel paper relating thereto, and (3) all proceeds, thereto including, without limitation, insurance, sale, lease and rental proceeds, and proceeds of proceeds.**

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
**GA 4930712 07/23/2022**

FILING OFFICE COPY - UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

EXHIBIT
tabbies
7

[redacted]

# CERTIFICATE OF ORIGIN FOR A VEHICLE

## KODIAK, LTD.

| | | | |
|---|---|---|---|
| DATE<br>12/28/18 | | | INVOICE NO.<br>3968 |
| VEHICLE IDENTIFICATION NO.<br>IB9MC4821KFBJ7411 | | YEAR<br>2019 | MAKE<br>KODIAK |
| BODY TYPE<br>DELIMBER TRAILER | SHIPPING WT.<br>9,500 | G.V.W.R.<br>55,000 | SERIES OR MODEL<br>148LTDK |

I, the undersigned authorized representative of the company. firm, or corporation named below, hereby certify that the new vehicle described above is the property of the said company, firm, or corporation and is transferred on the above date and under the Invoice Number indicated to the following distributor or dealer.

NAME OF DISTRIBUTOR, DEALER, ETC.

flint Equipment Company
1206 Blaylock Street
Albany, GA 31705

It is further certified that this was the first transfer of such new vehicle in ordinary trade and commerce.

**KODIAK, LTD.**

BY: ______________________
(SIGNATURE OF AUTIIORIZED AGENlj

GAUTIER.MS

**Each undersigned seller certifies to the best of his knowledge and belief under penalty of law that the vehicle is new and has not been registered in this or any state at the time of delivery and the vehicle is not subject to any security interests other than those disclosed herein and warrant title to the vehicle.**

**FOR VALUE RECEIVED I TRANSFER THE VEHICLE DESCRIBED ON THE FACE OF THIS CERTIFICATE TO:**

**DISTRIBUTION-DEALER ASSIGNMENT NO. 1**

NAME OF PURCHASER(s) TCH, Inc.

ADDRESS 148 Van Heusen Dr. Ozark,AL 36360-1070

I certify to the best of my knowledge that the odometer reading is N/A

DEALER Flint Equipment Co. BY: Tim Kern

STATE OF Georgia

COUNTY OF Fulton

Being duly sworn upon oath says that the statements set forth are true And correct. Subscribed and sworn to me before this 30 day of January 2019

Amanda M. Sellers

AMANDA M SELLERS ★ MY COMMISSION EXPIRES JULY 11, 2020 NOTARY PUBLIC PAULDING COUNTY, GEORGIA

USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION

**DISTRIBUTION-DEALER ASSIGNMENT NO. 2**

NAME OF PURCHASER(s) Flint Equipment Company

ADDRESS 4500 Wendell Dr. SW Atlanta, GA 30336

I certify to the best of my knowledge that the odometer reading is

DEALER BY: TCH, Inc.

STATE OF Georgia

COUNTY OF Fulton

Being duly sworn upon oath says that the statements set forth are true And correct. Subscribed and sworn to me before this day of June 2022

AMANDA M SELLERS MY COMMISSION EXPIRES JULY 11, 2024 NOTARY PUBLIC DOUGLAS COUNTY, GEORGIA

USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION

**DISTRIBUTION-DEALER ASSIGNMENT NO. 3**

NAME OF PURCHASER(s) Southern Trucking Company L.L.C

ADDRESS 2136 GA Highway 93 S Lot 2 Albany, GA 31705

I certify to the best of my knowledge that the odometer reading is

DEALER Flint Equipment Company BY: Tim Kern

STATE OF Georgia

COUNTY OF Fulton

Being duly sworn upon oath says that the statements set forth are true And correct. Subscribed and sworn to me before this day of July 2022

AMANDA M SELLERS MY COMMISSION EXPIRES JULY 11, 2024 NOTARY PUBLIC DOUGLAS COUNTY, GEORGIA

USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION

**LIENHOLDER**

1ST lien in favor of John Deere Construction & Forestry Company

whose address is P.O. Box 6600 Johnston, IA 50131-6600

2nd lien in favor of John Deere Construction & Forestry Company

whose address is P.O. Box 6600 Johnston, IA 50131-6600

**CREDIT APPLICATION (Page 1 of 4)**

FLINT CONSTRUCTION & FORESTRY DIVISION | JOHN DEERE FINANCIAL | John Deere Construction Phone: 800-323-8542 Fax: 800-826-8267 | PowerPlan™ PowerPlan Phone: 800-634-9661 Fax: 800-436-3224

Dealer Name: ______ Salesperson/Location: ______ / ______ Dealer #: ______ Date: ______

Applying for: ☐ RETAIL NOTE ☐ LEASE ☐ REVOLVING/POWERPLAN ☐ FLINT EQUIPMENT CO. ACCOUNT

(If no box is checked, we will consider your application for PowerPlan.)

**COPY OF DRIVER'S LICENSE REQUIRED.**

Fields marked with an asterisk (*) are required by law (USA PATRIOT Act) when applying for revolving credit. Your application cannot be processed without this information.
* Required for all applications submitted on behalf of an organization. If applicable, signature required below.

## APPLICANT INFORMATION (EITHER BUSINESS OR INDIVIDUAL)

Type of Business* (please check one): ☐ S Corp ☐ C Corp ☐ General Partnership^ ☒ LLC* ☐ Limited Partnership^ ☐ Trust^ ☐ Municipality ☐ Sole Proprietor

^ If applying as an LLC, a copy of the Operating Agreement & Articles of Organization is required with this application, or Partnership Agreement if applying as a Partnership, or Trust Agreement if applying as a Trust.

Organizational Legal Name: (do not abbreviate)*: Southern Trucking Company LLC
Federal Tax ID #:* 8609

(OR) Individual's Legal First:* Jared Middle:* Heath Last:* Evans Social Security #: -9796

Date of Birth: /1982 Are you a U.S. citizen? ☒ Yes ☐ No Time in Business: (required) 1.5 yrs

Business Phone #/* -6932 Mobile Phone #: -6932 Email Address:

Physical Address:* 2136 GA. Hwy. 93 S. Lot 2 County:* Grady City:* Cairo State:* GA ZIP Code: 39828

Mailing Address: 2136 GA. Hwy. 93 S. Lot 2 County: Grady City: Cairo State: GA. ZIP Code: 39828

## PRIMARY OWNER INFORMATION REQUIRED FOR PARTNERSHIP, LLC, AND CORPORATIONS

First:* Jared Middle:* Heath Last:* Evans Social Security #:* -9796

Physical Address:* 2136 GA. Hwy 93 S. Lot 2 City:* Cairo State:* GA ZIP Code:* 39828

Date of Birth:* /1982 Are you a U.S. citizen? ☒ Yes ☐ No

## CO-APPLICANT INFORMATION (EITHER BUSINESS OR INDIVIDUAL)

Organizational Legal Name: (do not abbreviate)* Federal Tax ID #:*

(OR) Individual's Legal First:* Middle:* Last:* Social Security #:*

Physical Address:* County:* City:* State:* ZIP Code:*

Date of Birth:* Phone #: Are you a U.S. citizen? ☐ Yes ☐ No Time in Business:

## FINANCIAL INFORMATION: A valid driver's license or equivalent required at signing

Bank Name: United National Bank Acct. #: [redacted] Contact Name:

Equipment Finance Co.: John Deere Financial Acct. #: Phone #: Fax #: Contact Name:

## INSURANCE INFORMATION NOTE: Not applicable to revolving credit**

Insurance Agency Name: Contact Name: Policy #: Phone #: Fax #:

Physical Address: City: County: State: ZIP Code:

** Insurance coverage is required and will ask for proof of coverage with financing (not applicable to Revolving/PowerPlan).

**Notice to Applicant:** You represent that the information given in the entire application, including all applicant names and any other information provided in this credit application is (1) true, correct, and complete, and (2) provided for the purpose of obtaining credit in an amount set forth in the credit policies and practices of John Deere Financial, f.s.b. (JDF), Deere Credit, Inc. (DCI), or John Deere Construction and Forestry Company (JDCFC) (collectively referred to as "we," "us," and "our"). You hereby authorize the release to us or our designee (and any assignee or potential assignee thereof) (1) your credit information from any source including, but not limited to, your balance sheet, cash flow statements, and any income statement. The authorization shall apply to this application and subsequently for the purposes of update, renewal, or extension of such credit and for reviewing or collecting the resulting account.
You understand that any decision to grant or deny an installment or lease application will be made by DCI or JDCFC in Iowa. You understand that any decision to grant or deny revolving credit will be made by JDF in Wisconsin. You understand that this application may be used for obtaining credit or lease approval for any DCI or JDCFC product. You understand this account is for commercial and government use only. Married applicants can apply for an individual account. You authorize us to share information with our affiliates, disclose financial information about you as described in the credit agreement and further notices and disclosures sent to you, and to send you information by facsimile or other electronic means. You also agree that any notices or disclosures can, at your option, be provided electronically to the last email address that you provided us. You further certify that you are authorized to sign on behalf of the applicant.
You understand that this application may also be used for the purposes of establishing a credit account with Flint Equipment Company. You agree that Flint Equipment Company may rely on the information in this credit application to establish that account. You agree to the terms of the Flint Equipment Company credit agreement (page 3-4) including a 1.5% service charge on all amounts over 30 days. You also agree to pay all sums due and to become due including, but not limited to, collection costs and attorneys' fee. Flint Equipment Company also has the right to obtain (or review) the applicant's credit report. This Credit Application consists of two (2) pages. Notice to Applicant is continued on the next page.

X [signature] Southern Trucking Co. LLC Owner 5/9/22
Applicant Signature (required) Title Date

X [signature], Individually Jared Heath Evans 5/9/22
Primary Owner Signature Individually Print Name Date

Required for Corporation, LLC, and Partnership in addition to the signature on behalf of the Organizational Applicant above (by signing, such Primary Owner, shall be personally liable for all transactions and obligations arising under any John Deere Financial account that may be approved by JDF pursuant to this Application).

X ______ Print Name ______ Title ______ Date ______
Co-Applicant Signature Company

X ______, Individual Print Name ______
Co-Applicant Signature Individual

EXHIBIT 8

CR2110862 (19-10)

# PowerPlan™

## POWERPLAN™ CREDIT AGREEMENT

**TERMINOLOGY.** In this Agreement, the words you, your, and yours mean each person and/or business entity who applies for and is granted a PowerPlan Account, including any co-applicant identified on the application, as well as any person permitted to use the Account. JDF means John Deere Financial, f.s.b., or any subsequent holder of the Account or any balances arising under the Account.

**POWERPLAN ACCOUNT.** You request a PowerPlan Account from JDF, and further authorize JDF to issue a PowerPlan Account card to each merchant from whom you may make a purchase. By applying for a Preferred Account, or by using a Merchant Authorized Account to make a purchase from a merchant who requests JDF to open one for you, you agree that this Credit Agreement will apply to all purchases made through your PowerPlan Account by you or any person you authorize. This Agreement is not binding on JDF until JDF has approved your credit and given you notice of approval. You authorize JDF to honor any purchases you make by mail, telephone, internet, facsimile transmission (fax), or other electronic means on your Account. You agree that a signature is not necessary as authorization in such cases. You agree that any authorized use of your Account or Card constitutes your acceptance of all the terms and conditions of this Agreement, as it may be amended from time to time. If you submit your application to JDF by internet, facsimile transmission (fax), or other electronic means, you agree that the application will have the same effect as a signed original. You agree that you will promptly notify JDF in writing of any suspected loss, theft, or unauthorized use of the Account. You may be liable for the unauthorized use of your PowerPlan Account before you notify JDF in writing at PowerPlan, P.O. Box 5328, Madison, Wisconsin 53705-0328, of the unauthorized use. In any case, your liability will not exceed $50. You agree to give JDF prompt notice of any change in your name, mailing address, or place of employment. You agree that until JDF receives notice of your new address, JDF may continue to send statements and other notices to the address you gave JDF on the application for this Account. You agree that, for the purposes of this Agreement, you will be deemed to "reside" in the state of your billing address as shown on JDF's records. You consent and agree that your telephone conversations with JDF may be recorded to further improve JDF's customer service. You agree that JDF and any affiliates and any retained debt collector may place phone calls to you using any telephone number, including a mobile phone number, you have provided to JDF, any affiliate or any retained debt collector, including calls using an automatic dialing and announcing device and prerecorded calls, and that such calls are not "unsolicited" under state or federal law. If more than one person or entity signed the application, each is jointly and severally responsible for all obligations, and amounts due, under this agreement. This Agreement is not binding on JDF until JDF has approved your credit and given you notice of approval. If Maryland law applies, Subtitle 9 of Title 12 of the Maryland Commercial Law will apply.

**ACCOUNT TYPE.** If your PowerPlan Account arose through JDF's purchase of your existing account balance with a merchant, or at the request of one or more merchants your Account may be classified as a Merchant Authorized Account. Merchant Authorized Accounts are usable only at a merchant who asked JDF to finance your purchases from them. JDF may, in its sole discretion, classify your account as a Preferred Account. Certain special features or promotions that JDF may offer from time to time may be made available only to Preferred Accounts. When JDF opens your Account, and on each monthly statement, JDF will indicate whether your Account is either a Preferred or Merchant Authorized Account.

**ACCOUNT USE.** By applying for or accepting a PowerPlan Commercial or Governmental Account, you agree to use your Account primarily to make purchases for commercial or governmental use, and not for personal, family, or household use. You agree to pay JDF all amounts charged by the use of the Account, plus Finance Charges, and the other charges described below. JDF will allow a purchase of authorized goods or services from a participating merchant to be made through your account as long as (1) you are not in default; (2) your financial condition has not materially or adversely changed; and (3) we have not been provided information by third parties that indicates serious charge-offs or delinquencies with other of your accounts.

**You agree that JDF is not responsible for the refusal of anyone to allow a purchase to be made through your PowerPlan Account.**

**CREDIT LIMIT.** JDF will establish and advise you of your regular credit limit when JDF opens your Account and on each monthly statement. JDF may establish separate credit limits with special conditions which will be disclosed to you on your monthly statement. Your use of any such special credit limit shall constitute your agreement to those disclosed special conditions.

You agree that JDF may increase or decrease your credit limit(s) at any time, in JDF's sole discretion, without prior notice to you. You agree to promptly prepare and provide to JDF any financial and Account information that JDF may, in its sole discretion, request from you.

**MONTHLY STATEMENT.** JDF will send you a monthly statement whenever there is activity on your Account, unless the only activity is a payment in full. Your monthly statement will show your New Balance, any Finance Charge, any Late Fees, the Minimum Required Payment and the Payment Due Date. In addition, it will show your Credit Limit(s), an itemized list of current Purchases, Payments, and Credits, as well as other information concerning your Account.

JDF will send your monthly statements on dates and in intervals determined by JDF. Such statement shall be deemed correct and accepted by you unless JDF is notified to the contrary in writing within 60 days of the date of that statement. If you think your monthly statement is incorrect, write to JDF on a separate sheet at the address shown on the back of your billing statement. Describe the error as best you can, and include your Account number in all correspondence.

**PAYMENT.** The Payment Due Date is the date the payment must be received at the address shown on the front of your monthly statement. You may at any time pay your entire New Balance or pay more than the Minimum Required Payment, and you may avoid or reduce Finance Charges by doing so. However, payment of more than the Minimum Required Payment, while reducing your balance will not prepay your Account or be applied against future Minimum Required Payments. If your Payment Due Date falls on a Saturday, Sunday, or holiday, the Payment Due Date will not be extended. All payments must be in U.S. dollars and drawn on funds on deposit in the United States. Payments must be sent to PowerPlan, at the address designated on your monthly payment stub or to any other payment address JDF later designates on your monthly statement payment stub.

**FINANCE CHARGE RATES.** Finance Charges on your PowerPlan Account may be calculated using **variable rates** that will be determined by reference to a **"Base Rate"** to which is added a **"Spread"** to arrive at the current rate. The same Spread will be used for purchase(s) within your Account.

> The Base Rate from which your variable rates will be determined is the annual percentage rate of interest announced publicly from time to time by Citibank, N.A. in New York, New York, as the base rate it uses for interest rate determinations, which was in effect at the close of business on the fifteenth (15th) calendar day of each month, or the next succeeding business day if the fifteenth is not a business day ("Reference Day").
>
> The Spread added to the Base Rate to determine the **ANNUAL PERCENTAGE RATE** (APR) that will apply to your Account will be:
>
> **Spread** 14.9%

Rate increases and decreases that result from changes in the Base Rate will take effect on the first day of the month, or the next succeeding business day if the first day is not a business day, after the Reference Day on which the Base Rate changes.

Changes in your variable rates will apply to your existing balances as well as to future purchases. An increase in your rate will increase the total Finance Charge accruing on your Account and the balance on which your Minimum Required Payment is calculated.

Current effective rates are shown below:

| | Daily Periodic Rate(s) Regular Purchases | ANNUAL PERCENTAGE RATE(S) Regular Purchases |
|---|---|---|
| Rate | .055205% | 20.15% |

The above rates are correct as of the date of printing, September 3, 2019, but are subject to change after that date.

**FINANCE CHARGE CALCULATION.** Finance Charges will accrue on your Account Balances as follows:

> JDF will assess a FINANCE CHARGE, calculated as shown below, if your New Balance is not paid in full on or before the Payment Due Date. To avoid additional Finance Charges on purchases, you must pay the New Balance, in full on or before the Payment Due Date.

The amount of your **Finance Charges** will be determined as follows:

> JDF uses the daily periodic rates and corresponding **APR** shown in this Agreement. The applicable periodic rate is applied to the "Average Daily Balance" of your purchases, including current transactions, during the current billing cycle.
>
> To get the "Average Daily Balance," JDF takes the beginning balance of your purchases each day, starting with any Previous Balance outstanding on the first day of the monthly billing cycle, add new purchases and debits and subtract payments or credits. This determines the daily balance. Unless JDF elects to use a later date, purchases are added to the daily balance as of the date of purchase.
>
> JDF totals the daily balances for the billing cycle and divides the total by the number of days in the billing cycle. This gives JDF the "Average Daily Balance" which is shown on your monthly statement. Finance Charges may accrue on Special Promotions Transactions at a different rate, as explained in the Special Promotions section of this Agreement.

**DEFAULT FINANCE CHARGE RATE.** If you are in default, you may no longer qualify for any reduced interest rate Special Promotions and you agree that, at JDF's option, the APR applicable to any outstanding reduced interest rate Special Promotion(s), may be increased to the APR described in this agreement.

**A MINIMUM FINANCE CHARGE** of One Dollar will be made when the result of the application of the periodic rate(s) to the "Average Daily Balance" is less than One Dollar.

**MINIMUM REQUIRED PAYMENT.** Except as provided below, you agree to pay each month a combined Minimum Required Payment equal to:

1. Any late payment fee due; **plus**
2. Any additional fees due; **plus**
3. Any amount past due; **plus**
4. For Purchases:
   (a) **Either** the greater of: $50, or 20% of your New Balance (less any Conversion Balance (balances transferred to PowerPlan from a merchant's accounts receivable) and less any Special Promotions Transactions(s) balances on which no payment is due) if it exceeds $50;
   (b) ***Or*** your entire New Balance (less any Conversion Balance and Special Promotions Transaction(s) balances on which no payment is due), if it is less than $50.
5. The amount of any Special Promotions Transaction that is due;
6. For Conversion Balances:
   (a) **Either** the greater of: $50, or 20% of your Conversion Balance, if that balance exceeds $50:
   (b) ***Or*** your entire Conversion Balance, if it is less than $50;
7. Any Due in Full Balances.

**DUE-IN-FULL PROVISION FOR GOVERNMENTAL ACCOUNTS.**
**If you are a local, state, or federal government agency or department, you agree to pay the entire balance of your account on the date shown on your monthly statement.**

**DUE-IN-FULL PROVISION FOR OPEN ITEM BILLING/ PAYMENT BY INVOICE ACCOUNTS: If your Account has been set up for our invoice specific payment application option, the entire balance will be due on the date shown on your monthly statement.**

**RENTAL TRANSACTIONS: Any transaction that includes the financing of an equipment rental charge will be due in full at the end of the next billing cycle, and that amount must be paid in addition to any Minimum Required payment described above.**

**SPECIAL PROMOTIONS.** From time to time, special promotional financing terms, such as extended free periods, incentive interest rates on certain purchases for limited time periods, or other promotions may be available at the discretion of JDF. These special terms will be disclosed by the merchant at the time of purchase. Purchases you make during these special promotions will be separately identified on your monthly statement and will become part of the balance on which your FINANCE CHARGE and Minimum Required Payment are calculated at the time provided in the special promotion terms disclosure. These transactions include:

**NO-PAYMENTS/NO-INTEREST TRANSACTIONS.** Unless otherwise disclosed, minimum monthly payments will be deferred and Finance Charge will not accrue during any disclosed No-Payments/No-Interest period described. Finance Charges will accrue at the APR applicable to your Account after the due date of your No-Payment/No-Interest transaction, unless otherwise disclosed.

**SAME AS CASH TRANSACTIONS.** Unless otherwise disclosed, minimum monthly payments will be deferred and Finance Charge will accrue during any Same As Cash period described on your monthly statement. No Finance Charge will be due until the end of this Same As Cash period and any accrued Finance Charge will be waived if the entire Same As Cash balance is paid in full by the end of the Same As Cash period.

**OTHER FEES & CHARGES.** JDF will add to your Account: (1) A Late Payment Fee of $50 if JDF has not received a payment of at least the current portion of the Minimum Required Payment (Minimum Required Payment plus unpaid late payment fees and past due amounts) within 10 days after the Payment Due Date; (2) A Returned Payment Fee of $45, for any check or electronic payment authorization that is dishonored upon first presentment; (3) expenses incurred in connection with the enforcement of our remedies upon default, including without limitation, (a) repossession, repair and collection costs, (b) attorney fees plus court costs and related fees, including any bankruptcy fees and costs to the extent permitted by applicable law, if JDF refers your Account for collection to an attorney; (4) any filing fee paid by JDF required for any Uniform Commercial Code ("UCC") financing, continuation or termination statement related to the perfection the security interest granted to JDF; and (5) a $20 processing fee for the processing of those UCC filings. Any credit balance in excess of $5 on your account will be refunded within 30 business days from JDF's receipt of your written request. Otherwise, JDF will refund to you any credit balance remaining on your account after six months. You agree that JDF may retain any credit balance if it is less than $5 or if JDF does not know your address and it cannot be traced through the last address or telephone number provided to JDF.

**ACCEPTING PAYMENT.** You agree that JDF can accept late or partial payments, as well as payments marked "paid in full" or with other restrictive endorsements, without losing any of its rights under this Agreement.

**DISCLOSURE OF FINANCIAL INFORMATION.** You agree that JDF may report your performance under this Agreement to credit reporting agencies and others who request a credit reference from JDF. You agree that JDF may ask credit reporting agencies or others you list as a credit reference for consumer reports or information regarding your credit history at any time for all legitimate purposes, including credit decisions and the review and collection of your account. You authorize JDF to share information regarding your Account with its corporate affiliates and other companies that offer products and services JDF believes may be of interest to you. **JDF's affiliates may use certain consumer report information as a factor in establishing your eligibility for consumer credit. If you object to this, you must notify JDF by calling PowerPlan Customer Service at 800-634-9661, and providing your name, Social Security number, address and Account number, and certain information will not be provided to those affiliates.**

**CLOSING YOUR ACCOUNT.** You may close your Account at any time by notifying JDF in writing. You agree that JDF may close or suspend your Account to future purchases at any time without prior notice. You agree that JDF may close or suspend your Account to future purchases if your Account has no activity for 6 or more months. You agree that regardless of the closing or suspension of your Account, you remain responsible for paying the amount you owe JDF according to the terms of this Agreement.

**SECURITY INTEREST.** You grant JDF a purchase money security interest in all merchandise purchased through your Account, and its proceeds, including insurance proceeds, but this provision does not apply if you reside in NC and the APR on a purchase or transaction exceeds 15%. JDF's security interest continues until such merchandise is paid for in full by application of your payments in the manner described in this Agreement. You agree that all funds owed to you, or received by you, from anyone resulting from the labor and materials supplied by you which were purchased through your Account will be held in trust for JDF's benefit ("Trust Funds"). You agree to promptly pay to JDF those Trust Funds, you agree that you have no interest in those Trust Funds and you irrevocably assign to JDF your accounts receivable that comprise those Trust Funds. You authorize JDF, at its option, to direct any such Trust Funds owed to you be made jointly payable to you and JDF.

**PAYMENT APPLICATION.** You agree that your payments will be applied as JDF determines in its sole discretion. You agree that JDF has this discretion and that JDF may exercise it to suit its own convenience and interests, without further notice to you. You also agree that JDF may change how it applies payments at any time without notice to you. You acknowledge that the exercise of this discretion by JDF may result in cases in which the application of your payments to your Account creates higher Finance Charges than other payment application methods and that this may include payments allocated to balances with lower APRs before balances with higher APRs and/or to balances with longer promotional periods before balances with shorter or no promotional periods.

You agree that your payments will be credited as of the date of receipt at the address on the payment stub of your Monthly Statement if received by 11:00 a.m. Central Time Monday through Friday (otherwise next business day); but if payment is not accompanied by the payment stub, is not in the envelope we provided, includes other items, such as other checks, staples or paper clips, or is not received at that location, credit may be delayed up to five days.

If you have been set up for the invoice specific payment application option (Open Item Billing/Payment by Invoice) and if a purchase made through your account included, in the transaction information sent to JDF, an invoice number, and you later send a payment to JDF that you designate to be applied to that transaction, including the invoice number, that payment will, not withstanding any other payment application provision on the Agreement, be applied first to pay any unpaid balance due on that transaction, provided, however, that if invoices on your Account are past due, JDF reserves the right to apply any portion of or all of the payment received to these older invoices, unless JDF receives written notice of a dispute with this invoice(s) and acknowledges this dispute in writing. JDF further reserves the right to apply any amount of payment received, even if specific invoices are named, to finance charges that remain past due. Any remaining payment amount will be applied as otherwise specified in this Agreement. The application of any payment to a transaction as described above will not be a waiver of any balance due attributable to other transactions, any Finance Charges or other charges.

**MERCHANT CHARGEBACKS.** JDF may charge back to a merchant who sold goods or services to you on your Account, any part of your Account balance related to those purchases. In that event, this Agreement will be deemed assigned to the merchant to the extent of the chargeback. You agree to such an assignment and further agree to pay the merchant the amount of such chargeback in accordance with the terms of this Agreement.

**DEFAULT.** You agree that you will be in default if: (a) you fail to pay the Minimum Required Payment within 10 days after the Payment Due Date; (b) the value of JDF's security interest in any collateral is materially impaired; (c) your ability to repay is materially reduced by you exceeding your credit limit, by a change in your employment, by a change in your obligations, by bankruptcy or insolvency proceedings involving you, or (for community property state residents only) by a change in your marital status or domicile; or (d) the sole proprietor, a partner or a personal guarantor of the business holding the Account dies or becomes incompetent; (e) you have provided JDF false or misleading information relating to your credit application or Account; (f) you fail to perform any other of your obligations under the terms of this Agreement as it may be amended; or (g) you are in default under any agreement you have with JDF or any of its affiliates.

If you fail to make the Minimum Required Payment when due, JDF may close your Account to future purchases. You agree that upon your default, JDF may close your Account to future purchases and that JDF may demand immediate payment of your entire Account balance, after giving you any notice and opportunity to cure the default required by applicable law. In addition, you agree that JDF shall have all the rights of a secured creditor under the Uniform Commercial Code and other applicable law.

**DELAY IN ENFORCEMENT.** You agree that JDF can delay enforcing its rights under this Agreement without losing them.

**ELECTRONIC DISCLOSURE.** You agree that any notices and disclosures related to your Account can be delivered to you in printed form or by electronic means if you provided an electronic mail address to JDF when you applied for this Account or at a later date. Until JDF receives notice of a new electronic mail address, JDF may continue to send such notices and disclosures to the electronic mail address you most recently provided to JDF.

**GOVERNING LAW.** This Agreement must be approved, and all charges and payments to your Account processed by JDF at its office in Madison, Wisconsin. Therefore, this Agreement and your Account will be governed by the substantive law of the United States and to the extent state law applies to this Agreement the substantive law of the State of Wisconsin; regardless of whether or not you reside in Wisconsin. The law of your state of residence will apply to JDF's recovery of any merchandise or other collateral located there.

This is the entire Agreement between you and JDF relating to your PowerPlan Account and no oral changes can be made. Invalidity of any provision of this Agreement shall not affect the validity and enforceability of the remainder of its terms.

**CHANGING THIS AGREEMENT.** IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT. You agree that JDF may change this Agreement, including the Finance Charge Calculation and the APR, at any time, by providing prior notice to you. To the extent that the law permits and JDF indicates in the notice, the changes will apply to your existing Account balance as well as to future transactions.

IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT. To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means for you: When you open an account, you will be asked for your name, address, date of birth, and other information that will allow JDF to identify you. You may also be asked to show your driver's license or other identifying documents.

Your Choices to Limit Marketing:

- The John Deere Financial companies are providing this notice. They include Deere & Company, Deere Credit, Inc., John Deere Construction & Forestry Company and John Deere Financial, f.s.b.
- You may limit the John Deere companies, such as the manufacturing, credit, leasing and insurance affiliates, from marketing their products or services to you based on your personal information that they receive from any John Deere Financial company. This information may include your income, account history, and credit score.
- Your choice to limit marketing offers from the John Deere companies will apply for at least 5 years from when you tell us your choice. Once that period expires, you will receive a renewal notice that will allow you to continue to limit marketing offers from the John Deere companies for at least another 5 years.
- **To limit marketing offers, contact us (800-634-9661).**

**Notice to Applicant (continued):**

**By submitting your credit application, you agree that all information regarding your account may be provided to corporate affiliates of, all three referred to as, Lender, "we," "us," and "our," and other companies which may offer or provide services to you or Lender. Those affiliates may use certain consumer report information as a factor in establishing your eligibility for credit or insurance. If you object to this, you must notify us by calling 800-634-9661, and providing your name, Social Security number, address, and account number, and certain consumer report information will not then be provided to those affiliates.**

By submitting this application electronically, you agree that you are electronically signing this credit application, and such electronic signature shall be treated as an affirmation by you to the truthfulness of all information provided on this application. You agree that we are expressly relying on the accuracy of the information submitted in making a credit or lease decision.

**APPLICANT(S) ACKNOWLEDGE THAT (1) THE SELLER HAS NOT REPRESENTED THAT THE TERMS OF THIS FINANCING ARE MORE OR LESS FAVORABLE THAN OTHER FINANCING (2) THE SELLER IS NOT APPLICANT'S AGENT IN OBTAINING THE FINANCING (3) APPLICANT MAY OBTAIN FINANCING FROM OTHER SOURCES AND (4) THE SELLER MAY BE COMPENSATED FOR SERVICES INVOLVED IN ARRANGING THIS FINANCING.**

**If this application for credit is denied**, or if your revolving (PowerPlan) credit limit is later decreased, you have the right to a written statement listing the principal reason(s) for that denial or credit limit decrease. To obtain the written statement, please send a letter to the following address within sixty (60) days from the date you are notified of that decision.

| | |
|---|---|
| **For revolving credit applications and credit decreases:** | John Deere Financial<br>P.O. Box 5328<br>Madison, WI 53705 |
| **For installment or lease applications:** | Customer Service Department — Construction Finance Group<br>Deere Credit Services, Inc.<br>P.O. Box 6600<br>Johnston, IA 50131-6600 |

We will send you a written statement of reason(s) for the denial or revolving credit limit decrease within sixty (60) days of receiving your request.

You release all claims against DCI, JDCFC, John Deere Financial, f.s.b., and their affiliates and your other creditors for all acts or omissions which occur in verifying the above information.

**NOTICE FOR OHIO RESIDENTS (Installment and Lease Applications Only):**
The Ohio laws against discrimination require that all creditors make credit equally available to all credit-worthy customers and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

**FLINT**
CONSTRUCTION & FORESTRY DIVISION

| BRANCH: | PHONE: |
|---|---|
| Adairsville, GA | 770-773-9857 |
| Albany, GA | 229-888-1212 |
| Atlanta, GA | 404-691-9445 |
| Braselton, GA | 770-965-1889 |
| Brunswick, GA | 912-264-6161 |
| Columbus, GA | 706-687-3344 |
| Grovetown, GA | 706-855-5440 |
| Macon, GA | 478-788-1586 |
| Savannah, GA | 912-964-7370 |
| Andrews, SC | 843-221-4940 |
| Aynor, SC | 843-358-5688 |
| Columbia, SC | 803-794-9340 |
| Ladson, SC | 843-572-0400 |
| Simpsonville, SC | 864-963-5835 |
| Walterboro, SC | 843-539-1420 |
| Dothan, AL | 334-794-8691 |
| Troy, AL | 334-566-4181 |

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 22-10941-AEC |
| | ) | |
| JARED EVANS, | ) | CHAPTER 7 |
| | ) | |
| Debtor | ) | HON. AUSTIN E. CARTER |
| | ) | |
| JOHN DEERE CONSTRUCTION & | ) | |
| FORESTRY COMPANY, | ) | |
| Movant | ) | |
| vs. | ) | CONTESTED MATTER |
| | ) | |
| JARED EVANS, | ) | |
| Debtor | ) | |
| ROBERT M. MATSON, | ) | |
| Trustee | ) | |

**CERTIFICATE OF SERVICE**

This is to certify that I have on this day electronically filed the foregoing **Motion for Relief from the Automatic Stay and Notice of Assignment of Hearing** using the Bankruptcy Court's Electronic Case Filing program, which sends a notice of this document and an accompanying link to this document to the following parties who have appeared in this case under the Bankruptcy Court's Electronic Case Filing program: *Debtor's attorney, Will O. Woodall, Jr.*

I further certify that on this day I caused a copy of this document to be served via U.S. First Class Mail, with adequate postage prepaid on the parties set forth below:

Jared Evans
2136 GA Hwy 93 South Lot 2
Cairo, GA 39828

U.S. Trustee
U.S. Trustee - MAC
440 Martin Luther King Jr. Boulevard
Suite 302
Macon, GA 31201

Robert M. Matson
Chapter 7 Trustee
P.O. Box 309
Macon, GA 31202

This 24th day of March, 2023.

*/s/ Michael B. Pugh*
**MICHAEL B. PUGH**
Georgia State Bar No. 150170

THOMPSON, O'BRIEN, KAPPLER & NASUTI, P.C.
2 Sun Court, Suite 400
Peachtree Corners, Georgia 30092
(770) 925-0111
E-mail: mpugh@tokn.com
Attorneys for John Deere Construction & Forestry Company
and John Deere Financial, f.s.b.